## OLMSTEAD *v.* WEBB.

APPEALS; PRACTICE; CONSENT DECREES; EVIDENCE; WILLS; UNDUE INFLUENCE; ATTORNEY AND CLIENT; PRIVILEGED COMMUNICATIONS; ORDER OF PROOF; APPELLATE PRACTICE.

1. In a will case, where issues are framed in the Probate Court and referred to the Circuit Court for jury trial, an appeal lies from the final decree of the Probate Court entered after the return of the issues with the answers by the jury, and not from the order or judgment of the Circuit Court certifying the case back to the Probate Court.

2. A decree will not be deemed to be a consent decree and to constitute a waiver of errors, unless it plainly appears that the decree was in fact agreed by all parties to be final and conclusive.

3. When undue influence is sought to be proved to invalidate a will, any fact, no matter how slight, bearing at all upon the point at issue, and not wholly irrelevant, is admissible in evidence; and the admissibility of such evidence is largely within the discretion of the trial court.

4. The admission in evidence of the circumstances surrounding the execution of the will of the father of a testatrix, six years prior to the date of her will, which was the one attacked, *held* not to be reversible error, although of doubtful propriety.

5. Instructions given by a testator to his attorney in the preparation of his will, when the will subsequently comes into controversy, are not ordinarily privileged communications.

6. An attorney is not bound by his obligation to preserve silence as to a privileged communication, when the client, or his representative, charges him directly or indirectly with fraud or other improper or unprofessional conduct in relation to the subject of the communication.

7. It is error to refuse to allow a physician, who was in attendance upon a testator, to state that one suffering from Bright's disease as decedent then was, was likely, at times, to lose his mind, when such testimony was offered for the purpose of weakening the effect of a declaration by the testator just prior to his death, derogatory to the caveatee, and also to contradict another medical witness who had testified that it was not "characteristic of that disease" for one suffering therefrom to become "flighty or turn upon his best friend."

8. In order to justify a trial court in directing a verdict, the evidence, and all proper inferences from it, must make so plain a case that all reasonable men would be driven to one and the same conclusion thereon.

9. The mental and physical condition of a testatrix, though they may not be such as would of themselves render her incompetent to make a will, are nevertheless circumstances to be considered in determining whether she was the subject of coercion or undue influence exercised in any form.

10. In the trial of a will case, care should be taken by the trial court to prevent the confusion of an issue relating to the capacity of the testator to make a will, with an issue relating to the exercise of undue influence.

11. When evidence is offered out of order or at the wrong stage of the case, its admission or rejection is a question peculiarly within the discretion of the trial court, which will not be disturbed except for very strong reasons in the interest of justice.

12. Failure to suggest a question at the hearing on appeal, will ordinarily be deemed a waiver of it, and the appellate court will not feel bound to consider it, unless it be fundamental in its nature.

Nos. 333 and 334.   Submitted November 8, 1894.   Decided December 4, 1894.

Hearing on appeals by the caveatee in a cause involving the validity of a will.   The first appeal was taken from an order of the special term of the Supreme Court of the District of Columbia, sitting as a law court, returning issues which had been sent from the special term sitting as an Orphans' Court.   The second appeal was from a decree of the Orphans' Court, entered upon the return of the issues with the findings of the jury thereon, revoking the probate of a will.   *Reversed.*

The Court in its opinion stated the case as follows :

The two appeals, numbered respectively 333 and 334, were taken in the same cause and are in effect one.   They have consequently, by consent, been consolidated, and considered together, subject, however, to appellee's motion to dismiss the appeal in No. 334.

Katie Hutchinson Olmstead made her last will on June 6, 1889, and died August 1 thereafter, leaving no issue.   Her mother and one sister, the appellee, and her husband, the appellant, John F. Olmstead, survived her.   By the terms of the will her entire estate vested in her said husband, who was also made executor thereof without bond.   The will was duly probated in the District of Columbia, September 20, 1889.   The appellee, Linda Hutchinson Webb (then Ball) filed her petition in the proper court, December 23, 1891, contesting the said will and seeking to set it aside. In accordance with the practice in such cases, issues were made up and certified to the special term holding the Circuit Court for trial by jury therein.   The issues were four in number.   The first submitted the question of capacity to make the will; the second, whether the contents thereof were known to her at or before execution; the third,

whether the will was executed under the undue influence of John F. Olmstead, when her mind, from its disordered, diseased and enfeebled state, was unable to resist the same; and the fourth, whether it was procured by the fraud or misrepresentation of said John F. Olmstead, or other persons acting under his direction. The jury found for the caveator on each issue; that is to say, the first two issues were answered "no," and the last two "yes." The caveatee's motion for a new trial having been overruled, the issues, with the answer of the jury to each, were certified back to the Orphans' Court, whereupon judgment was entered revoking the probate of the will made September 20, 1889, and the grant of letters testamentary to the said caveatee, John F. Olmstead, and refusing probate of the instrument as the last will and testament of said Katie Hutchinson Olmstead. The caveatee took a bill of exceptions on the trial of the issues in the Circuit Court, and appealed from the order made therein. This is appeal No. 333. He also took an appeal from the order or decree entered in the Orphan's Court upon the return of the issues thereto, which is No. 334.

[On behalf of the appellee, a motion was filed to dismiss the appeal numbered 334, "because the order or decree passed by the Supreme Court of the District of Columbia, holding a court for probate business, bearing date May 1, 1894, from which this appeal was taken, is a consent decree, and was prepared and procured to be passed and entered by said court, by and on the motion of the said appellant or his counsel, and upon the consent in writing of counsel for the appellee;" and also to affirm the said decree, pursuant to paragraph 2 of Rule XV of this court. The further material facts will be found in the opinion.—REPORTER.]

*Mr. Henry E. Davis* and *Mr. J. M. Wilson* for the appellant:

1. The court erred in refusing to instruct the jury, as prayed by appellant, that sufficient evidence had not been

presented to justify them in finding that, at the time of making the will, the testatrix was not of sufficient sound mind and memory to make a valid will. No effort was made to prove that she was incapable of executing a valid deed or contract; and if the case stood on this issue alone there could be no question that there was no evidence to warrant a finding that such incapacity existed. *Railway Co.* v. *Seley,* 152 U. S. 145; *Randall* v. *Railroad,* 109 U. S. 478; *Schofield* v. *Railway,* 114 U. S. 615; *Gunther* v. *Ins. Co.,* 134 U. S. 110; *Bunt* v. *Gold Mine Co.,* 138 U. S. 453; *Railway* v. *McDonald,* 152 U. S. 262; *Tyson* v. *Tyson,* 37 Md. 583. The failure to grant such an instruction is error for which the case will be reversed on appeal. *Cauffman* v. *King,* 82 Pa. St. 77.

2. There was no sufficient evidence to sustain a verdict on the ground of undue influence. The testimony discloses that the relations between the testatrix and her husband (the appellant) were of the most affectionate character, and the will was in exact accordance with her intention expressed long before. In the light of this testimony, there must be some evidence of domination in respect of the making of the will. To show that there were disagreements between the mother of testatrix and the appellant, and that he was a man of positive and domineering character, is not sufficient. The jury are not permitted to *conjecture* that he *might* have exercised undue influence, but there must be evidence tending to prove that he did something that controlled her, and it must appear that what he did " amounted to force or coercion, destroying free agency." *Mackall* v. *Mackall,* 135 U. S. 172, 173; *Conley* v. *Nailor,* 118 U. S. 134, 135; *Gardner* v. *Gardner,* 22 Wend. 540; *Means* v. *Means,* 5 Strob. (S. C. L.) 190, 195.

*Messrs. Webb & Webb* and *Mr. Enoch Totten* for the appellee:

1. This is a case of an attempted devise, in fee, by a testa-

trix, to a childless husband as old as her mother, of a large estate never enjoyed by the testatrix in her lifetime, with no remainder, vested or contingent, to mother, sister or niece, away from her own blood forever, during the lifetime of her mother, sister or niece, and with no mention of them whatever in the instrument. In all cases of such an unnatural and suspicious attempt at a devise, the courts, on the question being raised, will inquire with the most rigid and searching scrutiny into all the facts. For the extent of the investigation permitted in such cases, see *Davis* v. *Calvert*, 5 G. & J. 269; *Clark* v. *Stansbury*, 49 Md. 346; *Moore* v. *McDonald*, 68 Md. 340.

The surrounding circumstances of the testator may be given in evidence. Postlethwaite's Appeal, 68 Penn. St. 477; *White* v. *Bailey*, 10 Mich. 155; *Hess* v. *Weik*, Md. Ct. of App., Jan. 12, 1894; Schouler on Wills, Sec. 240.

2. An attorney will, in no case, be permitted, even if he should be willing to do so, to divulge any matter which has been communicated to him in professional confidence. It is not his privilege but the privilege of his client. Legal Ethics (Sharswood), 87; 1 A. & E. Ency. of Law, 944, notes; *Jenkinson* v. *State*, 5 Beas. 465; *Benjamin* v. *Coventry*, 10 Wend. 353; *Parker* v. *Carter*, 4 Munf. 273; *Wilson* v. *Troup*, 7 John. Ch. 25; *Crosby* v. *Berger*, 11 Paige, 377; *Bank* v. *Meserson*, 3 Barb. Ch. 528; *Aiken* v. *Kilbourn*, 27 Me. 352; *Chew* v. *Bank*, 2 Md. Ch. 231; *Crisler* v. *Garland*, 11 S. & M. 136.

3. On the whole record the case stands on all fours with the leading case in New York, of *Tyler* v. *Gardiner*, 35 N. Y., at 584. See also *Delafield* v. *Parish*, 25 N. Y. 35; *Lee* v. *Dill*, 11 Abb. 214; *Lake* v. *Ranney*, 33 Barb. 49; *Bergen* v. *Udall*, 31 Barb. 9, 25; *Crispell* v. *Dubois*, 4 Barb. 397; *Marsh* v. *Tyrrell*, 2 Haggard, 87, 110; *Barry* v. *Butlin*, 1 Curtis, 638.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It seems that as this court had just been organized, and there was some doubt as to whether the appeal should be

prosecuted from the judgment of the Circuit Court, or from the final decree made thereon in the special term for the Orphans' Court, the caveatee, out of abundant caution, prosecuted an appeal from each. As the proceeding is in the Orphans' Court—the reference of issues to the Circuit Court being merely in aid thereof—and the final decree is rendered therein, the appeal should be taken therefrom.

This brings us to the consideration of the motion to dismiss the appeal No. 334, which is the one taken from the decree in the Orphans' Court.* The ground of the motion is that this decree was entered by consent of the appellee, on the request of the appellant, and cannot therefore be appealed from.

It is true that the counsel for appellant prepared the decree, the form of which was submitted to the counsel for

---

*The following is the full text of the decree of the Orphans' Court, with the indorsement thereon :

In the Supreme Court of the District of Columbia, holding a special term for Orphans' Court business. In the matter of the last will and testament of Katie H. Olmstead, deceased. District of Columbia. Filed May 1, 1894. L. P. Wright, Register of Wills. Upon consideration of the certificate of John R. Young, clerk of the Supreme Court of the District of Columbia, certifying to this court, holding a special term for Orphans' Court business, the verdict of the jury upon the issues sent to the Circuit Court by the order of this court of the 23d day of January, A. D. 1892, and upon consideration of the said verdict, it is, this first day of May, A. D. 1894, ordered, adjudged, and decreed that the order or decree of this court of the 20th day of September, A. D. 1889, admitting to probate and record the last will and testament of the said Katie H. Olmstead, and granting letters testamentary thereof to John F. Olmstead, the executor by said will appointed, be, and the same hereby is, revoked and for nothing held ; and it is further adjudged, ordered, and decreed that the said last will and testament be not admitted to probate and record as the last will and testament of the said Katie H. Olmstead. And the said John F. Olmstead, in open court, appeals herefrom to the Court of Appeals of the District of Columbia, which said appeal is allowed, and the penalty of the bond thereupon is hereby fixed in the sum of $500. A. B. Hagner.

We consent to the above. Enoch Totten, Webb & Webb, for caveator.

[Indorsed as follows] : No. 3611. In re estate of Katie H. Olmstead, deceased. Consent decree revoking the order of September 20, 1889, which admitted will to probate and granted letters testamentary thereunder to John F. Olmstead, and appeal therefrom. District of Columbia. Filed May 1, 1894. L. P. Wright, Register of Wills. Riddle & Davis, attorneys and counsellors at law, Fendall building, Washington, D. C.—REPORTER.

the appellee and consented to by them, and procured its entry on the minutes of the Orphans' Court. This action was taken for the purpose of speeding the process of appeal.

The decree has none of the elements of a consent decree in the sense that the appellant thereby loses the benefit of his appeal from it, or, correctly speaking, waives all error therein. Without discussing the facts presented in the affidavits in support of and opposition to the motion, it is sufficient to say that the decree itself recites the notice of appeal and its allowance and the amount fixed as the penalty of the appeal bond, and does not recite that it is a consent decree.

In order to amount to a waiver of error, we think that it should plainly appear that the decree was in fact agreed to be final and conclusive. *Morris* v. *Davies*, 5 Cl. & Fin. 163, 224. There is a clear distinction between the case at bar, as regards the facts involved, and that of *United States* v. *Babbitt*, 104 U. S. 768, which takes it out of the rule therein asserted. The motion to dismiss must therefore be overruled, and it is so ordered.

2. We come now to the consideration of the errors assigned on the exceptions taken on the trial of the issues in the Circuit Court. The first is based upon the action of the court in admitting in evidence, on behalf of appellees, certain matters relating to the last illness of Hayward M. Hutchinson, in May, 1883; and the execution of a will by him; the conduct of appellant with respect thereto and towards the appellee and her mother; and certain litigation concerning the administration of said Hutchinson's estate. The objection to all of this testimony was that it was "irrelevant, immaterial and incompetent," and "called for facts too remote to affect the issues in this case." The objection was followed up with a motion to strike out and exclude, after it was all in, which was also overruled; and relates to a great mass of evidence spread upon the record, under the practice heretofore prevailing of copying into the bill of

exceptions, verbatim, the notes of the official stenographer. In addition, there is considerable documentary evidence, consisting chiefly of the record in the collateral litigation referred to. We cannot undertake the labor of setting out all of the facts and circumstances contained in this record, but will try to state the leading facts sufficiently to show the point made by the appellant and the grounds of our ruling thereon.

Hayward M. Hutchinson lived for a number of years in the District of Columbia. He was one of the stockholders of the Alaska Commercial Co., the lessee of the privilege of taking fur seals on the islands belonging to the United States in Behring Sea, and chiefly through this acquired a large fortune. He died in the District, May 10, 1883, of Bright's disease, leaving a widow and two children, Linda and Katie, who were married, the former one to Mr. Ball and the latter to the appellant. During his last illness, Mr. Hutchinson sent to his friend and counsel, Noah L. Jeffries, who was spending the summer at Ridley Park, Pa., to come and prepare his will. Jeffries came, and after an interview went away to prepare it. But having to return home in the afternoon, he called in William F. Mattingly, also an attorney of the Washington bar, and entrusted the will to him to take to the testator, accompanied by an explanatory note. The will so prepared devised all the real estate to the two daughters, subject to the wife's right to occupy certain property for life, at the same time confirming to her the title to certain realty then in her name. The stock of the Alaska Commercial Co. was bequeathed to a trustee for the use of the wife and daughters, in equal portions; but the wife's interest to pass to the daughters also upon her death or marriage. All the residue of the personal estate was given to the wife and daughters, share and share alike.

When this will was read by Mr. Mattingly, Mr. Hutchinson said it was not what he wanted, and directed him to prepare

another, which was done. The second will devised and bequeathed the entire estate to the wife for life, with remainder to the daughters, and constituted the wife executrix, though without relieving her from giving bond. This will was signed with proper formality and subsequently probated. Appellant and other members of the family were in constant attendance upon the testator during his last illness. The object of much of the testimony with respect to these matters was to furnish circumstances for the indulgence of an inference that appellant was then engaged in an effort to procure a disposition of testator's property which would bring his wife's interest therein into his possession, so that its use and final disposition might be controlled by him. And we may add that this evidence was followed by other testimony tending to show that appellant's wife was of a weak and gentle character, easily influenced and controlled; and that she was completely under the influence of appellant, who was strong willed, domineering and despotic. There was also proof tending to show that he first tried to induce his mother-in-law to renounce the will and claim her legal rights in the inheritance, and then to induce the appellee to " break the will," in order that she and his wife might come into immediate possession, and so forth. Failing in this, it was attempted to be shown that he attempted to estrange his wife from her mother and sister, and that in 1884 he filed a bill against his mother-in-law, charging her with making a false inventory by omitting therefrom some $34,000 in cash which she appropriated to her own use, and with other acts of waste of the estate, and so forth. This bill he procured his wife to make oath to. Appellant's wife had no child to inherit from her, and it is claimed that the acts of appellant, subsequent to the failure to obtain control of the estate through the will of Hutchinson, or its renunciation, were all in aid of a purpose to procure from her a will for his exclusive benefit. And all this was attempted to be connected with proof, which they submitted, as tending to

show by circumstances, that the will in controversy was procured by undue influence from his said wife during the last days of her life. She, too, it seems, had the fatal "Bright's disease of the kidneys," which had carried her father off. She returned from Virginia Beach in the spring of 1889, ill and depressed in spirits. Her physician, Dr. Sowers, said that she was threatened with convulsions before and after June 1, and when "in that condition was totally unfit for anything, physically or mentally, until relieved by treatment." She made the will on June 6. On the night of June 15, she was seized with a convulsion, and, though recovering therefrom, never left the house again, and died on August 1. Evidence was also introduced tending to show that, from the time of her serious illness, appellant attempted to keep her mother and sister from seeing her, and never permitted them to be with her without the presence also of himself or his servants. It is but just to add that there was some evidence tending to show that the change from the "Jeffries Will," as it is called, to the one actually executed by Mr. Hutchinson was possibly induced by Mrs. Hutchinson by some agreement to make her own will at the same time. And we may also, in the same view, add that the appellant positively denied all the facts testified to as tending to show that he was connected with any attempt to influence either Mr. Hutchinson or his own wife in making their wills, or to annul the will of Mr. Hutchinson after his death. He also denied the exercise of any influence over his wife in her relations with her mother and sister, and all improper motives with respect thereto. He also introduced much evidence tending to show the most affectionate relations between his wife and himself, and to negative any inference that she was under his complete domination or control.

It must be borne in mind, too, that we are not passing upon the weight or credibility of the testimony; that is for the jury alone. Assuming, therefore, that the jury took

appellee's view of the truth of this evidence and of the weight to be attached to it, the question remains: Was it competent? Was it, in the main, so connected, no matter how slender the chain, with the decisive point of this controversy as that it was more likely to aid the jury in coming to a just and reasonable conclusion thereon than to confuse and mislead them? Undoubtedly there are some facts and circumstances which, considered by themselves, were calculated to create a prejudice against the appellant and his cause in the minds of the jury which might have had undue influence upon the general verdict. But, at the same time, they constitute a part of the history of the entire transaction, and we cannot say that they may not have tended in some slight degree to illustrate certain other circumstances therein proper to be considered in arriving at the motives which may have prompted the conduct of the appellant throughout.

As a general rule, remote and collateral facts are inadmissible, and we confess some doubt as to whether the evidence objected to here constitutes an exception to the rule. The remoteness in point of time is of little consequence compared with remoteness in point of causation, or relation to the question at issue. But some cases admit of and seem to require a wider range of evidence than others. Undue influence, coercion, fraud, and the like, naturally and ordinarily, are not susceptible of direct proof, but must be inferred from circumstances. Consequently, as has been well said: "Any fact, no matter how slight, bearing at all on the point at issue, and not wholly irrelevant, may be admitted. But the circumstances, when combined and considered by the jury, should be so strong as to satisfy them of the existence of the fact they are offered to establish." *Davis* v. *Calvert*, 5 G. & J. 269, 304. In a later case, wherein this doctrine is affirmed, the same court said: " Undue influence is generally proved by a number of facts, each of which, standing alone, may be of little weight, but taken collectively may satisfy a rational mind of its existence." *Moore* v. *McDonald*, 68 Md. 321, 329.

In such a case, too, much must be left to the sound discretion of the trial judge, who is called upon "to discriminate between such facts as are merely collateral and foreign to the issue, and such as are connected with it." *Davis* v. *Calvert, supra.*

After careful consideration, we do not feel justified in saying that, in this instance, the discretion of the court was not properly exercised.

3. The next question to be considered arises on the exclusion of the evidence of Noah L. Jeffries when offered by appellant to show that the will drawn by him for Hayward M. Hutchinson was in accordance with the instructions given him by said Hutchinson.  Under the next preceding error we have referred to the evidence tending to show that when this will was read to Hutchinson he declared it was nothing like his will, and then and there refused to execute it.  Jeffries had been the attorney of the Alaska Commercial Co. at Washington, and he and Hutchinson, who was manager, occupied the same office and were on intimate terms. Some effort had been made to show that Jeffries was also an intimate friend of appellant, and had acted as his attorney in certain matters, and an attempt was made to create the inference that he prepared this will in the interest of appellant and in furtherance of his scheme to acquire his wife's part of the Hutchinson estate.  An attempt was also made to connect him with the alleged scheme by his sending the will to the house by Wm. F. Mattingly, who had been appellant's attorney, and whose motives and conduct were also impugned, as we shall see later when we come to consider the exclusion of his testimony.  The appellant called Jeffries, and offered to prove by him that he received his instructions from Hutchinson, and no one else, and that the will which he drew was in exact conformity therewith.  The court refused to hear the evidence on the objection of appellee, that it was a privileged communication between client and attorney.

We think this was error. It is not necessary to discuss, much less to question, the old, well settled and salutary rule with respect to the exclusion of evidence of communications by client to attorney. It does not apply to the point as here presented. In England it was early held that the rule does not ordinarily apply to instructions given by a testator to his attorney in the preparation of his will, when the same subsequently came into controversy. *Russell* v. *Jackson*, 9 Hare, 387. In that case the Vice Chancellor said: " In the case, then, of a testamentary disposition, the very foundations on which the rule proceeds seem to be wanting; and in the absence of any illegal purpose entertained by the testator, there does not seem to be any ground for applying the rule in such a case." See also *Duke of Bedford* v. *Abercorn*, 1 My. & Cr. 312; *Nourse* v. *Finch*, 1 Ves. Jr. 344. The case of *Russell* v. *Jackson* was cited with approval and liberally quoted from by the Supreme Court of the United States in a case which must control us: *Blackburn* v. *Crawfords*, 3 Wall. 175, 193. The court, it is true, said that it preferred to place its decision of the case before it upon the implied waiver of the client. The doctrine of *Russell* v. *Jackson* has been upheld also by other courts of high authority. *Scott* v. *Harris*, 113 Ill. 447, 454; *Graham* v. *O'Fallon*, 4 Mo. 338; 42 Hun, 516.

There is another ground also upon which the admissibility of this testimony may be sustained. The evidence of the appellee involved a charge of shameful misconduct and attempted treachery upon the part of Jeffries, which, if undenied, would also tend to greatly prejudice the case of appellant. If, therefore, the appellee and her mother stand in the right of Hayward M. Hutchinson, deceased, and may claim the privilege, they may also by their conduct waive it. The object of the rule ceases, and the attorney is no longer bound by his obligation, when the client or his representatives charge him, either directly or indirectly, with fraud or other improper or unprofessional conduct.

4. In the examination of Dr. Sowers, who was the physician of Mr. Hutchinson, he was permitted to say : " On the 21st, three days before the will was executed, Mr. Hutchinson talked to me about the making of a will generally. He said he had always intended to make a will; some of his friends that he had talked to thought differently. Every time he had arranged to make his will something happened to prevent it, but he always intended to make one, and now he was fully determined to. He said, in the first place : ' I want to leave all I have to my wife, and I want to have every possible means afforded her of enjoying the life she is now leading, unmolested by anybody.' He said also: 'I formerly had a very high regard for Mr. Olmstead; such a regard as a man ought to have to allow a man to marry his daughter, but during my sickness I have had occasion to watch him very closely; I have watched him very closely, and as a result of that observation I believe Mr. Olmstead to be a damned rascal, and one who would give my wife, unprotected, no end of trouble ; and for those reasons I propose to make my will.' I believe that is exactly what he said, literally." These facts were intimately connected with the other testimony which we have heretofore held to have been admissible, and form part of the chain of circumstances therein, and for the reasons given we cannot say that the court erred in its admission.

5. To rebut any injurious inference from this evidence, the appellant was asked by his counsel: " What were you doing about the house of Mr. Hutchinson that he could observe during that time ? " The court refused to permit the question to be answered, and we do not think that he erred in so ruling. The witness had, upon direct and cross-examination, testified very fully to all that he saw, heard and did at the house of Mr. Hutchinson during his last illness. An answer to that question would have involved a mere general denial of any conduct which might have afforded occasion for the opinion expressed concerning him by

deceased, or a repetition of his former evidence, neither of which would have been proper. Besides, he was permitted to relate a circumstance, not brought out before, tending to show that deceased, on one occasion, at least, about that time, was not in his right mind.

6. In addition to the offer made of his own testimony on this point, appellant offered to prove by Dr. N. S. Lincoln that a person suffering from Bright's disease of the kidneys, as Mr. Hutchinson then was, was likely, at times, to lose his mind. The statement was made that the witness would so testify, and it was offered not only to weaken the probable effect of the expression of opinion by deceased concerning appellant, but also, in some degree, to contradict Dr. Sowers, who, on cross-examination and in answer to the direct question, had said that it was not "characteristic of that disease" for one suffering therefrom to become "flighty and turn upon his best friend." The witness had been called in during the last days of Mr. Hutchinson's sickness and knew that he was suffering from uremic poisoning. On the first call he found the patient unconscious, and he saw him on several days thereafter. The witness was not permitted to answer, and therein we think the learned judge erred. The testimony was competent; its weight was for the jury to determine.

7. The next error which we shall consider in the rejection of evidence offered by appellant arose in this manner. It will be remembered that William F. Mattingly, Esq., drew the will which Hayward M. Hutchinson finally executed, and was a witness thereto. He also at the same time drew a will for Mrs. Hutchinson. He had been the attorney of appellant in some litigation prior to that time, and had continued to represent him. It must also be remembered that the relations of appellant and his father in law had always been close, confidential and affectionate. Mr. Mattingly subsequently, as counsel, represented appellant in the bill which his wife filed against her mother as executrix of the

estate. He drew the will of appellant's wife, now in contro-
versy, and was a subscribing witness thereto. He was
naturally and properly called as a witness to prove the will,
and testified strongly in support thereof. Mrs. Hutchinson,
who exhibited much interest and some feeling in the case,
was examined at length on behalf of the appellee. She was
permitted to testify that, a few days after the funeral of her
husband, her "suspicions were aroused by Mr. Mattingly."
This she undertook to explain as follows: "I sent for Mr.
Mattingly and told him that I knew the will had to be pro-
bated, and I asked him what had to be done. I had talked
with him three or four minutes, when Mr. Olmstead walked
into the house. I could not say another word to Mr. Mat-
tingly; there was a feeling came over me that I could not
describe, and all I said to Mr. Mattingly after that was,
'Mr. Mattingly, it is not possible for you to be my attorney
and Mr. Olmstead's also.' I felt then that there was some-
thing wrong; that I mistrusted Mr. Olmstead and mistrusted
Mr. Mattingly." The witness further said that Mr. Mat-
tingly had always been Mr. Olmstead's attorney "to the best
of her knowledge." The testimony was not only calculated
to injure the reputation of Mr. Mattingly, if undenied, but
also to injure the cause of appellant, both because Mr.
Mattingly was an important and material witness on his
behalf, and he himself had been implicated in the act which
aroused Mrs. Hutchinson's suspicions. It is not easy to
perceive the relevancy of this particular piece of evidence
to the matter in controversy here; but, having been ad-
mitted, the appellant had the clear right to rebut it with
the testimony of Mr. Mattingly. He was offered as a wit-
ness by appellant, and Mrs. Hutchinson's statement was read
to him. After saying that he remembered calling on her,
he was asked, "Was anything then said about probating the
will?" The witness suggested that the communication was
privileged, and that he ought not to answer without the con-
sent of Mrs. Hutchinson. No such consent was given. The

question was then withdrawn, and the following propounded: "Mrs. Hutchinson testifies that the interview she had with you on the occasion just referred to, was terminated by her saying: 'Mr. Mattingly, it is not possible for you to be my attorney and Mr. Olmstead's also.' Did she say that to you, and was the interview so terminated?" The appellee objected to the witness answering, whereupon appellant stated that it was his purpose to prove by the witness that Mrs. Hutchinson did not close the interview in that way: "but that on the contrary, Mr. Mattingly himself, upon the revelation of a certain disposition on the part of Mrs. Hutchinson, said to her that as he had been Mr. Olmstead's lawyer for so long, and still was, he could not accept her employment." The court, however, refused to admit the evidence, and appellant excepted.

It is contended on behalf of the appellee that the witness himself declined to answer because of the relation of attorney and client which prevailed when the matter occurred. This is true as regards the first question asked, which went much farther than the one substituted therefor. We think it clear that Mrs. Hutchinson, by her attack upon the credit of the attorney, waived her right to command his silence to the extent of the inquiry made in the question which the court refused to permit him to answer. The testimony was material to the cause of appellant, and its exclusion constitutes reversible error.

8. There is another objection to evidence introduced on behalf of appellee which, though of little consequence, it may be well to consider, as the case will have to be tried again. This is the evidence of R. J. Meigs respecting the withdrawal of certain papers from the files by appellant in the suit instituted by him and his wife against Mrs. Hutchinson, which has been several times referred to. We think this evidence was irrelevant, and that it should have been excluded.

9. The court did not err in refusing, after the evidence

was all in, to instruct the jury, as prayed by the caveatee, to return a verdict for him. It would serve no useful purpose, especially as the case must be retried by the jury, for us to review the evidence and give in detail the grounds upon which our conclusion is founded. Suffice it to say that the failure of evidence was not so complete as that the court was bound to take the case from the jury; nor can it be said that the evidence, and all proper inferences therefrom, make so plain a case that all reasonable men would be driven to one and the same conclusion thereon. *Gardner* v. *Mich. C. RR.*, 150 U. S. 349; *Wash. Gas L. Co.* v. *Poore*, 3 App. D. C. 127.

We may say, however, that the evidence as regards the incapacity of the testatrix to make a will, considered by itself and with reference to that issue alone, is, to say the least, meagre and unsatisfactory, and were that the only issue in the cause, or even the main one, we would hardly deem it sufficient to sustain the verdict. The substantial and controlling issue of the case is, whether the will is in fact the free act of the testatrix, or the result of undue influence exercised upon her by her husband when she was feeble both in body and mind, and incapable of resistance.

The mental and physical condition of the testatrix, though they may not be such as, of themselves, to render her incompetent to make a will, are, nevertheless, circumstances to be considered in determining the question whether she was the subject of coercion or undue influence exerted in any form. Care should be taken, as seems to have been done in the charge that was given on the trial, to prevent the confusion of these two issues by the jury.

For the errors which we have pointed out, *the judgment and decree appealed from must be reversed, with costs to the appellant, and the cause remanded for a new trial. It is so ordered.*

---

On December 18, 1894, *Messrs. Webb & Webb* and *Mr. E.*

*Totten,* on behalf of the appellee, filed a motion for a rehearing.

Mr. Justice SHEPARD, on February 5, 1895, delivered the opinion of the Court:

The appellee's motion for rehearing is based in part upon points that were made on the hearing, but chiefly upon others, now for the first time brought to our attention. As regards the former, we see no reason to change our opinion, and deem it unnecessary to add anything thereto by way of further discussion.

The latter will be briefly discussed in view of the question of practice involved in their consideration. It is now claimed that the testimony, the exclusion of which we have held to be material error, was offered by the caveatee [appellant] in surrebuttal when it should have been offered in chief; and that its exclusion at that stage of the trial was a matter entirely within the discretion of the trial justice, without regard to its competency, if offered at the proper time.

The practice is well founded in reason as well as authority, that when evidence is offered out of order, or at the wrong stage of the case, its admission or rejection is a question peculiarly within the discretion of the trial court, which will not be disturbed except for very strong reasons in the interest of justice.

Had the evidence of each of the said witnesses been excluded because offered at the wrong time, we are not prepared to say that the action of the court in excluding it upon that ground might not have been sustained, save as regards that of Dr. Lincoln, which seems to have been offered at the only reasonable occasion therefor. But there is nothing in the record that shows, or tends to show, that the evidence was objected to, much less excluded, upon that ground, either wholly or in part. The trial evidently consumed much time; many witnesses were examined at great length; the record shows the calling and recalling of witnesses, and

the temporary suspension of the examination of one that others might be called and examined. These irregularities were presumably for the convenience of witnesses and counsel, and tend to show that strict, technical rules of procedure were not adhered to or enforced in the trial. The bill of exceptions, showing the rulings of the court that were from time to time objected to, is quite general in its terms; yet there is enough to show, with reasonable certainty, that in the case of the majority, if not all, of the witnesses, the only objection made and acted on was upon the ground of competency or relevancy, without regard to the time or order of the offer of their evidence.

The case was submitted to us, after full hearing, upon printed and oral arguments, in neither of which was any attempt made to sustain the exclusion of the evidence upon the grounds now submitted for consideration. The case having been so argued and submitted, it is too late now to go back and raise questions that ought then to have been presented, if intended to be relied on. Cases must be submitted as a whole and not in sections. Failure to suggest a question at the hearing will ordinarily be considered as a waiver of it, and the court will not feel bound to consider it unless it be fundamental in its nature. No reasonable excuse is given for the failure to suggest these additional points at the hearing. Had they been suggested and found well taken, the determination of the questions chiefly discussed in the opinion would have been wholly unnecessary. We will not reopen the case to entertain them now; and have less hesitation in refusing to do so, because they do not involve its merits in any particular. *The motion is overruled.*