UNITED STATES v. MAHONEY et al.
Cr. Action No. 9033.

District Court, W. D. Louisiana,
Shreveport Division.

Feb. 20, 1942.

944

Malcolm E. Lafargue, U. S. Atty., of Shreveport, La., for plaintiff.

H. M. Holder and Frank S. Kennedy, both of Shreveport, La., for defendants.

DAWKINS, District Judge.

On October 26, 1938, Harry and Truman Mahoney, along with Herbert Skaggs, Dando Davis, Frank Denman and Mrs. Ida Denman were charged in an indictment of two counts (1) with robbing by force and violence the Minden Bank and Trust Company at Minden, Louisiana, whose funds were insured by the Federal Deposit Insurance Corporation, of the sum of $18,000, and (2) conspiring to commit said robbery. On the same day, all save the last two were arraigned at Shreveport, Louisiana, and entered pleas of guilty. The two Mahoneys and Dando Davis were sentenced to fifteen years each in a Federal penitentiary, while Skaggs' sentence was for ten years, because he had aided in recovering a substantial part of the stolen money.

It will appear from the minute entry of this court that these pleas and sentences were made after the defendants had been previously sentenced in the State court, also on a plea of guilty for the same robbery, to serve from fourteen to twenty-eight years. The sentences of this court were made to run concurrently with those of the State. They were then in the custody of the State authorities and were brought into this court solely for the purpose of disposing of the charges here.

Thereafter, on May 22, 1939, Harry and Truman Mahoney were delivered to the U. S. Penitentiary at Leavenworth, Kansas; they, with some of the other defendants, having been released by the State to this court.

On June 13, 1941, the two Mahoneys filed in this court a pleading styled "The petitioners motion for a correction of sentence and judgment" consisting of some fifteen pages, including citation of sections of the criminal code and other authorities, and in which, among other things, it was alleged that the "judgment of conviction and sentence * * * is void—the petitioners were deprived of assistance of counsel for their defense (2) deceived and coerced by the assistant prosecutor into entering pleas of guilty and (3) petitioners are innocent of the crime charged." Specifically, they alleged in Article X that J. Fair Hardin, then Assistant U. S. Attorney, and now deceased, "several weeks prior to coming into the Federal Court for arraignment, interviewed the petitioners at the jail" and petitioners told him they desired to be represented by counsel, but that Hardin stated to them "you can not plead not guilty in the Federal court; you have already entered a plea of guilty in the State court to the same charge, 'and', hence your right to be represented by counsel is waived." Further that the F. B. I. agent, Peyrronin, prior to their arraignment, had said to them "if you think you are going to get a smart mouthpiece and beat this rap, you are mistaken, any lawyer that shows up here and accepts any of your dough, I am going to put him in jail right with you." Petitioners then quoted at length from Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, as well as other authorities. They also charged that Hardin "assured us we would receive twenty-five years each if we continued to fight the case"; and that "if you plead guilty in the state court, the Federal authorities will not prosecute you" which "deceiving doctrine was also advanced to each and both of the petitioners" by Peyrronin; that Hardin further promised that "we would receive a light sentence by the Federal court to run concurrently with said State sentence."

The names of some ten witnesses were given as those to be summonsed, including the Judge of this Court, the Judge of the State Court, the Assistant District Attor-

ney of this Court (now deceased), who handled the case here, the Warden of the State penitentiary, the F. B. I. agent, the jailer of Caddo Parish, the Sheriff of Webster Parish, and his deputy, the former Probation Officer of this Court, and the President of the Minden Bank and Trust Company, by whom it was alleged they would establish four propositions, to-wit: (1) That they were deceived and coerced into pleading guilty; (2) were deprived of assistance of counsel; (3) that the witnesses were unable to identify petitioners "as either of the robbers who robbed said bank"; and (4) to establish that it was the intention of this court that they should serve their sentences "concurrently with the State sentence, and that said sentences were to be served in the Louisiana State Penitentiary".

Petitioners prayed that they be given a hearing and that the court "have petitioners brought before this honorable court" and that "it correct the petitioners respective judgment (sentence) as due process of law required" and that counsel be appointed to represent them.

This court ordered the pleading filed and appointed counsel to represent the petitioners.

The District Attorney answered the petition denying all material allegations of the motion and setting forth at length the circumstances under which petitioners confessed their participation in the robbery of the Minden Bank and Trust Company, which was done after the Assistant District Attorney J. Fair Hardin had advised them, at their request, that if they made a full and truthful statement of the matter, he would not prosecute charges which had been made against the wives of these defendants, in which they had been charged with receiving the loot stolen from the bank.

On February 9, 1942, after the motion had been set for hearing at Shreveport for February 16th, following, and counsel had been appointed to represent them, petitioners sent to the Clerk and there was filed another pleading styled "supplement in support of the petitioners motion for correction of sentence and judgment", signed in their own proper persons, in which they asked that the original motion be considered as one to "vacate and set aside the judgment and sentence" and that it be treated as a "writ of error corum (sic) nobis at common law"; that they were

ignorant of their constitutional rights at the "time the criminal proceedings were taken * * * and they were helpless and unable to have sooner made known to this court the major complaints set forth in the body of their motion"; and that they be brought before the said court for hearing.

When the matter was called on the 16th of this month, counsel appeared for the petitioners, objected to proceeding without the presence of the petitioners. The court permitted the taking of testimony of two witnesses on behalf of the Government who were about to be inducted into the Army, to be used if it was decided that the hearing could proceed without bringing the petitioners before the bar. Otherwise, the matter was passed until the court could decide the question thus raised, that is, the right of petitioners to personally appear at the hearing.

It is not disputed by the Government that the petitioners are entitled to have the court inquire into the matters alleged as the basis for vacating the sentence or judgment heretofore entered. Whether the remedy be called a writ of error coram nobis, or motion to have the judgment declared void, the effect is the same, that is, to correct an alleged error not appearing upon the record, but discovered after trial, the effect of which, if proven, would be to set aside said judgment in whole or in part. In the absence of statutory limitations, the right to such relief can be barred only by such delays or laches as in good conscience would warrant a denial. See C.J.S., vol. 24, page 143, Criminal Law, § 1606. In any event, the pleadings have the effect of a motion for a new trial based upon newly discovered evidence. It has been uniformly held that the accused has no constitutional right to be present at the hearing of a motion for a new trial and the rule is the same in proceedings of this kind. C.J.S., vol. 24, page 157, Criminal Law, § 1607. The only case which has been found directly in point is that of Carman et al. v. State, 208 Ind. 297, 196 N.E. 78, 84, wherein apparently all of the issues of the present case were raised and decided. The appellants sought relief on the allegation that they were without the benefit of counsel when entering pleas of guilty; that they were misled by one representing himself as the attorney for "poor people" in that if they plead guilty to burglary, they would

receive a sentence of not more than two to fourteen years; whereas, the charge was automobile banditry and in which they were given a sentence of twenty-five years. They sought permission to appear in person, just as here, and the court in considering the provisions of the Indiana Constitution, which in substance were the same as those of the United States and the State of Louisiana, said:

"The appellants contend that article 1, § 13 of the Constitution of Indiana gave them the right to be present at the coram nobis hearing. This provision provides: 'In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.' .

"The appellants are in error in contending that the petition for a writ of error coram nobis is a criminal prosecution and a public trial. It is neither. The trial has already been had, and, as heretofore said, the only relief that could be granted would be the setting aside of the judgment and the granting of a new trial. As said in the case of Stephenson v. State, supra [205 Ind. 141, 179 N.E. 633, 186 N.E. 293], the state may dispute the facts alleged in the petition, and the issue of facts thus arising is tried by the court without the intervention of a jury. So it is clearly seen that the constitutional provision as heretofore set out is not applicable to the facts in the instant case."

It was also contended, as here, that the attorney who had represented the accused could not testify concerning his advice as the matter was privileged. For the reasons there given, I think the testimony of Messrs. Bolin and Campbell should be admitted for bearing upon the truthfulness of the petitioners in the allegation of their petition.

In determining the matter of permitting these defendants to be brought back to Shreveport, the record discloses that they have been sent to Alcatraz, which is reserved for hardened and experienced criminals, and I think this court may take notice of their records as indicating a possible desire to take advantage of this opportunity to escape, to say nothing of the expense that would be involved.

Besides, the documents attached to their petition indicate that the petitioners determined to file this proceeding after learning that the State had filed a detainer for their return to it, after the sentences they are now serving are finished, and their inability to get this withdrawn.

■ After full consideration, I am of the view that the law does not require, and the ends of justice do not warrant the bringing of petitioners before the court for the trial of their motion, and that this request should be denied.

Counsel for the petitioners will be permitted to take their testimony or that of anyone else by commission before the matter is disposed of.