**UNITED STATES of America, Plaintiff,**

v.

**William H. WIGGINS, Defendant.**

**Crim. No. 1803–53.**

United States District Court
District of Columbia.

June 23, 1960.

---

**7.** Harris v. Twentieth Century-Fox Films Corp., 2 Cir., 139 F.2d 571, 573.

**8.** Ibid.

**9.** 24 F.R.D. 19.

674

Oliver Gasch, U. S. Atty., and Oscar Altshuler, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Edward L. Genn, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is a motion by the defendant in a criminal case to vacate the judgment of conviction and set aside the sentence under 28 U.S.C. § 2255, on the alleged grounds that he was insane when the crime was committed by him, and further that he was mentally incompetent to stand trial. The defendant does not deny his guilt or claim innocence. He urges that he should not be held responsible for his crime because of his alleged mental condition.

The defendant was indicted on November 9, 1953 on a charge of robbery. He was tried before Judge Bailey of this Court on February 3 and 4, 1954, and was found guilty by the jury. On February 25, 1954, he was sentenced by Judge Bailey to imprisonment for a term of five to fifteen years. Apparently he has been eligible for parole for some time and, therefore, it seems reasonable to assume that the Parole Board has declined to grant him such relief.

The present motion was filed some years after the sentence was imposed. A hearing on the motion has been ordered by the Court of Appeals. Since the trial judge is now retired and is no longer active, the matter was assigned to me in the course of the ordinary routine, pursuant to Rule 25 of the Federal Rules of Criminal Procedure, 18 U.S.C.

There has been a growing misunderstanding on the part of prisoners who have been convicted and sentenced, as to the nature and scope of motions under 28 U.S.C. § 2255, to vacate the judgment of conviction and set aside the sentence. It seems appropriate, therefore, to recapitulate the basic principles governing such applications.

The pertinent portions of the statute read as follows:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

Apparently many prisoners assume that the remedy accorded by this provision is an additional routine review of the conviction, and frequently endeavor to institute such proceedings as a matter of course. Almost invariably such an application is filed by the prisoner *in propria persona*. Evidently the petition is prepared by him in what Arnold J., aptly termed "the enforced leisure of his confinement".[1] Manifestly this attitude constitutes a complete misconception and utter misunderstanding of the purpose and scope of the statute.

Ordinarily if a defendant pleads guilty and is sentenced, the entire case then comes to an end. Generally no motion lies under Section 2255 to set aside the sentence imposed on the basis of a plea of guilty. Such a plea is a solemn acknowledgment of guilt and constitutes a conviction. Under such circumstances the sentence may not be set aside and the defendant may not be permitted to withdraw his plea of guilty except by motion under Rule 32(d) of the Federal Rules of Criminal Procedure. Under this Rule, the Court is limited to granting such a motion only "to correct *manifest injustice*". Conditions justifying setting aside a plea of guilty after sentence has been imposed are, therefore, exceptional and rare. A defendant who enters a plea of guilty with a mental reservation is endeavoring to nurture but a forlorn hope.

If a defendant pleads not guilty and is tried, convicted and sentenced, the law gives him recourse to appellate proceedings in the Court of Appeals, which in some instances may be followed by a petition for a writ of certiorari to the Supreme Court. Errors alleged to have been committed at the trial may not be reviewed in any manner other than by ap-

1. Diggs v. Welch, 80 U.S.App.D.C. 5, 7, 148 F.2d 667, 639.

peal. When appellate proceedings come to an end, or if they are not instituted in due time, the case is closed.

■■ A motion to set aside a sentence under Section 2255 is not a substitute for an appeal. Such a motion is reserved solely for unusual and exceptional situations, as is also true of writs of *habeas corpus* and writs of error *coram nobis*.[2] To justify such relief it must affirmatively appear that by reason of some drastic deprivation or vital denial to the defendant of a paramount constitutional right, the trial court either had no jurisdiction or had lost it. The words "or is otherwise subject to collateral attack" add but little to the preceding clauses, since a judgment of conviction and a sentence imposed thereon are not ordinarily subject to collateral attack, except on the extraordinary grounds just mentioned.[3]

■ On a motion under Section 2255, the Court may not consider any defense to the indictment that might have been asserted at the trial. Thus, the defense of insanity or lack of mental capacity to commit the crime may not be entertained on such a motion. It must be interposed at the trial, if at all. On the other hand, there is a debatable question, concerning which there is a difference of opinion, whether mental capacity to stand trial at the time when the trial took place, is a matter that the Court may review on a motion under Section 2255. There is a cleavage among the Circuits on this point, some Circuits holding that such a question may not be raised collaterally on such a motion, and others adhering to the opposite view. In the District of Columbia Circuit it has been held by the Court of Appeals that this issue is open on a motion of this type, Bishop v. United States, 96 U.S. App.D.C. 117, 120, 223 F.2d 582.

■ Consequently, in the case at bar this Court declined to consider the contention that the defendant was insane at the time of the commission of the crime. The Court is passing, however, on the allegation that he was mentally incompetent to stand trial at the time when he was tried. A full hearing was held on this issue, considerable testimony was introduced by both sides, and at the request of counsel for the defendant, who had been appointed by the Court, a number of continuances were granted to enable him to procure various records.

■ The burden of proof is on the moving party to establish the contentions on which a motion under 28 U.S.C. § 2255 is founded. In fact, as Judge Prettyman observed in Bishop v. United States, supra, 96 U.S.App.D.C. at page 121, 223 F.2d at page 586, the moving party on such a motion "undertakes a severe burden". He further emphasized that the burden becomes magnified with lapse of time. Manifestly any other rule might well lead to a frustration of justice. The Government cannot be expected to procure evidence and affirmatively establish the mental capacity of a person as of a date many years previously.

While no statute of limitations runs against the assertion of a Constitutional right under Section 2255, nevertheless, lapse of time affects the quantum of required proof, as well as the good faith and the credibility of the moving party. If a prisoner after a long interval were able to obtain a new trial by means of a motion under Section 2255, the Government might well find itself unable to prove the defendant's guilt due to possible death, disappearance, or fading memory of witnesses. While zeal to protect the rights of defendants is commendable, the courts may not ignore the fact that it is also one of the primary purposes of the criminal law to protect members of the public in their homes and on the streets. "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be

---

2. See Moon v. United States, 106 U.S. App.D.C. 301, 272 F.2d 530.

3. This Court had occasion to analyze and enumerate with some degree of partic-

ularity the various grounds which may or may not form the basis of a motion under 28 U.S.C. § 2255, in United States v. Edwards, D.C., 152 F.Supp. 179.

strained till it is narrowed to a filament. We are to keep the balance true."[4] By these memorable words the Supreme Court set a beacon light for the course of dispensing justice in criminal cases.

The only evidence introduced in support of the motion was that of Dr. Thomas E. Griffin, a Government psychiatrist. He had occasion to examine the defendant in November 1954, and found that the defendant was at that time suffering from a psychosis. A lunacy inquisition, which had been instituted on the basis of Dr. Griffin's examination, resulted on March 3, 1955, in a finding that the defendant was of unsound mind as of that time, and resulted in his transfer from the penal institution in which he was then serving his sentence, to Saint Elizabeths Hospital for the mentally ill. Some time later he was removed back to a penal institution. Dr. Griffin stated on the witness stand that he was unable to express any opinion as to the defendant's mental state as of the date of the trial, i. e., February, 1954, which was about ten months before the doctor examined the defendant.

At this point it may be appropriate to observe that the question is not whether the defendant was of sound or unsound mind, or whether he was suffering from a mental disease, at the time of his trial. The issue is whether he was mentally competent to understand the proceedings against him and properly to assist in his own defense. A person who is suffering from a mental disease is not necessarily mentally incompetent in that sense. The concept of competency to stand trial is much narrower than the matter of presence or absence of mental disease. It is possible for a person to be partially insane and yet to be able to understand the nature of the proceedings against him and properly to assist in his own defense.

On the basis of the foregoing testimony, the Court finds as a fact and concludes that the defendant has not sustained the burden of proof resting on him to show that at the time of his trial he was mentally incompetent to understand the proceedings against him and properly to assist in his own defense or that he was incompetent to stand trial.

Mr. Joseph P. McCormick, the defendant's counsel, who had represented him at the trial, asked leave to take the witness stand and give evidence. The Court accorded him this privilege. He testified that he had consulted with the defendant prior to and during his trial, and that the defendant acted rationally and discussed matters in a rational manner without any indication of any lack of understanding. Objection to this testimony was interposed on the ground that it involved a disclosure of confidential communications. It should be observed that the witness was not permitted to reveal the contents of any communication between him and his client, but was limited to giving testimony as to his observations.

It is well established that if a client assails his attorney's conduct of his case, or if a patient attacks his physician's treatment, the privilege as to confidential communications is waived, since the lawyer or the physician, as the case may be, under these circumstances has a right to defend himself. His entire professional reputation may be at stake. It would be unconscionable and intolerable to permit the client or the patient to speak, but at the same time to seal the lips of the lawyer or the physician and thereby to bar the latter from explaining his version of events and defending himself.

Thus in Cooper v. United States, 6 Cir., 5 F.2d 824, 825, the Court stated:

"The rule which forbids an attorney from divulging matters communicated to him by his client in the course of professional employment is for the benefit of the client. But it may be waived by the client; and when a client, in attempting to avoid responsibility for his acts, as in this case, divulges in his testimony what he claims were communications between himself and his at-

---

4. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L. Ed. 674.

torney, and especially *when his version of what transpired reflects upon the attorney, the reason for the rule ceases to exist, and the attorney is at liberty to divulge the communications about which the client has testified.*" (Emphasis supplied.)

To the same effect are Farnsworth v. Sandford, 5 Cir., 115 F.2d 375, 377; United States v. Mahoney, D.C., 43 F. Supp. 943, 946; Mahoney v. United States, D.C., 48 F.Supp. 212, 215; and United States v. Monti, D.C., 100 F.Supp. 209, 212.

In United States v. Butler, D.C., 167 F. Supp. 102, 104, which involved a motion under Section 2255, the Court stated:

"While the rule with respect to privileged communications between attorney and client should be zealously guarded, yet *this privilege may be destroyed by the acts of the client in attacking the attorney on a charge of dereliction of duty.*" (Emphasis supplied.)

Many State courts have reached the same conclusions. Nave v. Baird, 12 Ind. 318; Moore v. State, 231 Ind. 690, 111 N. E.2d 47; Kennedy v. State, 232 Ind. 695, 116 N.E.2d 98; Everett v. Everett, 319 Mich. 475, 29 N.W.2d 919; Chase v. Chase, 78 R.I. 278, 81 A.2d 686.

If such a situation arises in actions against a physician or surgeon for malpractice, the latter is permitted to give testimony in his own defense that under other circumstances would be within the patient's privilege, Becknell v. Hosier, 10 Ind.App. 5, 11, 37 N.E. 580; Lane v. Boicourt, 128 Ind. 420, 423, 27 N.E. 1111.

To be sure in the case at bar trial counsel is not expressly accused of a dereliction of duty in failing to raise the issue that the defendant was not competent to stand trial. Such a criticism, however, is involved by necessary implication, because if the defendant was actually mentally incompetent to understand the proceedings against him and properly to assist in his own defense, these facts would have necessarily appeared to counsel in his consultations with his client and in any conversations

had with him either before or during the trial. It then would have become the duty of counsel to bring this matter to the attention of the court. Consequently, the manner in which trial counsel conducted the defense is tacitly attacked by the defendant, quite as much as though he had expressly made a statement to that effect. This Court held that under these circumstances, while counsel should not be required or compelled to testify, he nevertheless should be accorded the privilege of doing so, upon his request, which is what took place in this instance.

Such a course was approved by the Court of Appeals for the District of Columbia in Olmstead v. Webb, 5 App.D.C. 38, 51, where Shepard, J., wrote as follows:

"The object of the rule [i. e. regarding the confidential character of communications between attorney and client] ceases, and the attorney is no longer bound by his obligation, when the client or his representatives charge him, *either directly or indirectly*, with fraud or other improper or unprofessional conduct." (Emphasis supplied.)

This Court was not unmindful of the *per curiam* opinion of the Court of Appeals for this Circuit in Gunther v. United States, 97 U.S.App.D.C. 254, 230 F.2d 222, and in compliance with that ruling did not permit trial counsel to express an opinion or conclusion whether the defendant was competent to stand trial. His testimony was restricted to his detailed observations. It may be remarked in this connection that an examination of the briefs tends to indicate that this aspect of the matter was not exhaustively argued by counsel in the Gunther case. No authorities were cited in the opinion of the Court on this point.

In concluding this discussion the Court desires to call attention to the comments of Circuit Judge Pope of the Ninth Circuit, with whom Judges Stephens and Hamlin concurred, in Johnson v. United States, 267 F.2d 813, 815. These observations are applicable generally to motions under Section 2255, and specifically to the motion made in the instant case.

"It is plain that this case does not merit the extensive discussion it has received here. A brief order reciting that the judgment must be affirmed because the court simply found the facts against appellant, on overwhelming evidence against him, should suffice. We have taken pains here to set forth the facts more fully because we think it appropriate, by so doing, to demonstrate how the provisions of Title 28, § 2255 can be abused, and judicial processes perverted by the irresponsible use of a well-oiled typewriter and an uninhibited willingness to improvise a story.

"A busy trial court was required to put off pressing cases properly before it to grant a hearing on a petition fabricated by appellant with the aid of some Leavenworth cellmates. * * * An outrageously frivolous appeal such as this, obviously taken in bad faith, should not be allowed to take up the time of a court like this one, swamped with pressing business.

"Cases similar to this are currently flooding the courts by the hundreds. This is not an isolated instance of the abuse of § 2255, although candor compels us to say we cannot recall one quite so outrageous as this one. A day to day observation of these cases, as currently proliferated in sundry penitentiaries, suggests the need to build into § 2255 some safeguards to protect the courts against the abuse of their processes which persons like this appellant are now enabled to perpetrate."

The conditions that prevail in the Ninth Circuit as so vividly described by Judge Pope are also to be found in this Court. Thus, during the period commencing July 1, 1959 and ending March 31, 1960, motions under Section 2255 filed in this Court aggregated 182. During the corresponding period of the preceding fiscal year, there were 112 such motions filed. Each motion of this kind necessarily requires individual scrutiny and study. Some of them result in hearings. Yet actually most of them, if not all, have been found to be without foundation. It will be observed that Judge Pope suggests that there is a need to build into Section 2255 some safeguards to protect the courts against abuses of the process. Entirely aside from the financial cost to the Government of all these proceedings and the burden on members of the bar assigned to render gratuitous services to defendants at hearings on such motions, the time that busy courts give to these proceedings necessarily deprives them of an opportunity to devote it to other more deserving matters, and adds to the congestion of dockets. It must be emphasized that in all these cases the defendant has already had his day in court and has been convicted. A strong presumption of guilt is the invariable starting point.

The Court wishes to express its acknowledgment to Edward L. Genn, Esquire, a member of the District of Columbia bar, who was assigned by this Court to represent the defendant on this motion, for his able, zealous and well directed efforts in his client's behalf.

The motion is denied.