ROCCO ROMEO *et ux. vs.* ANTONIO PATE *et ux.*

JULY 9, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a bill in equity praying that the respondents be ordered to convey to the complainants by a good and sufficient deed free and clear of all encumbrances

two specifically described lots of land, together forming one parcel, situated in the city of Cranston, and also for certain other relief incidental to said prayer. After a hearing of the cause on its merits in the superior court a decree was entered by the trial justice granting the prayers of the bill. From the entry of that decree the respondents duly prosecuted their appeal to this court.

The evidence, largely undisputed but conflicting on certain important points, disclosed the following facts. The complainants, husband and wife, had for about fifteen years owned and operated a gasoline filling station on property which bounded southerly on the premises in dispute. These comprised two adjoining lots which bounded westerly on Elmwood avenue and were vacant except for a small building on one of them. Bounding southerly on Burbank street, which runs in an easterly direction from Elmwood avenue, there was a parcel of land made up of two lots which contained a dwelling house and a garage and which bounded northerly and westerly on the other lots hereinbefore referred to. All this property belonged to the heirs of Antonio Gentile.

The complainants, desiring to purchase the two lots fronting on Elmwood avenue, had interviewed the Gentile heirs with reference to this matter prior to April 1945 but the conversations were indefinite and nothing was put in writing. The respondents were primarily interested in buying the former Gentile property located on Burbank street, and on April 18, 1945 entered into a written agreement with the heirs, who apparently would not sell their property in separate parcels, to purchase all of it for the sum of $8700. Thereafter on April 22, 1945 the respondent Antonio Pate, who according to the complainants' testimony had discussed with them on several prior occasions the acquisition of the lots on Elmwood avenue, offered orally to sell them to the complainants for $3000, which offer was accepted and the latter then and there paid said respondent

$100, receiving from him a receipt which was in very general terms and did not describe the property involved.

It is the complainants' contention that at the above time it was agreed they were to receive from the respondents the two lots on Elmwood avenue as they then existed and were actually laid out, but that the boundaries of the lots or their particular description were not discussed by the parties until much later. The complainant Rocco Romeo testified as follows respecting the meeting of April 22, 1945: "Q. And at that time you were interested in the purchase of the property in dispute here? A. Well, Mr. Pate come to me and he said, 'I hear you was going to buy the property before me. Now, I need the house and I buy and you can buy the land off me the same day.' That is just what Mr. Pate tell me. Q. Now, what was the land that you agreed to buy from Mr. Pate? A. Was two lots next to my property."

The respondents, however, maintain it was understood at the start that they were not selling to the complainants the two lots to their full depth but according to the testimony of Antonio Pate: "On the one condition * * * we had an agreement with him to sell the front of the property. Not the back. Just the front — front lot. In other words, to make a long story short, I promise that I have — I supposed to have 92 feet on the front and 92 feet on the back." To allow the respondents to retain a parcel of the size thus indicated would necessitate withholding from the complainants part of the rear portion of the two lots in dispute.

Thereafter the respondent Antonio Pate brought the complainant Rocco Romeo to the office of the former's attorney apparently to arrange for the transfer of the two lots, but nothing further was then done and no agreement of sale was put in writing. At this time the parties were friendly and the complainants had retained no attorney. On September 12, 1945 those interested in the matter except Rocco Romeo's wife went to the office of a title company to complete the transaction. The respondent Antonio Pate

testified in answer to a question by his attorney: "Q. And then what happened? A. And then you—we took Mr. Romeo in order to buy the property the same day."

At that time the deed from the Gentile heirs to the respondents of the entire property was executed and delivered. Owing to some misunderstanding, however, the bank at which the respondents had borrowed money had placed its mortgage on the whole property instead of only on the part to be retained by the Pates. Because of this it became necessary to arrange with the bank to have it release the property in question from the operation of the mortgage before a deed from the respondents to the complainants could be prepared. This caused a delay of a few days. In the meantime the title company prepared such a release and also a deed from the respondents to the complainants in which the two lots in dispute were described in full both by lot numbers and by metes and bounds. These instruments were sent to the office of the respondents' attorney but were never executed.

At the office of the title company on September 12, 1945 the respondents did not have money enough to close their transaction with the Gentile heirs and the complainant Rocco Romeo paid over to the respondents $2900, being the unpaid balance of $3000, the price of the two lots in dispute. The said sum of $2900 was immediately turned over by respondents to the Gentile heirs to complete the amount of $8700 due them. On this occasion the complainant Rocco Romeo was given a receipt signed only by Antonio Pate which in substance stated that he had received from Rocco Romeo the sum of $3000 as the purchase price of two specifically numbered lots on assessors' plat 4 in Cranston subject to certain restrictions, the warranty deed to such lots to be delivered not later than October 1, 1945.

In April 1945 a survey and plat had been made of the Gentile land but none of the parties apparently had seen this plat prior to the meeting in September at the office of the title company. According to the testimony of re-

spondent Antonio Pate, after the transaction had been closed at that office and while the parties were on their way out, they stopped and looked at the plat, and a line was drawn thereon cutting across the two lots, the complainant Rocco Romeo agreeing to take that part of the lots which fronted on Elmwood avenue and the respondents were to retain the remainder thereof. The said complainant denied any such happening or agreement.

After the meeting at the title company there were several discussions at the lawyer's office in regard to just what property should be conveyed to the complainants by the respondents but no agreement was ever reached. In the latter part of September 1945 a check for $3050 was sent to Rocco Romeo by the respondents' attorney but was returned to the latter by the complainants' attorney.

The complainants in substance contend that the respondent Antonio Pate agreed to purchase for them from the Gentile heirs the two lots in dispute fronting on Elmwood avenue in their entirety, and that they, the complainants, paid the respondents the purchase price therefor. As the latter thereafter took title to these lots in their own names and refused to make the necessary conveyance thereof to the complainants, they maintain that in these circumstances the respondents hold the title to such lots for the complainants under a resulting trust.

In their answer the respondents merely content themselves with admitting or denying the prayers of the bill as the case may be. They take the position that there is no legal evidence to support the allegations of the bill against either respondent; that no resulting trust in favor of the complainants is proved; and that the trial justice was in error in entering a decree granting the relief prayed for.

An examination of the transcript and of the entire record in this cause at once raises several questions. In the first place it seems clear that the complainants drew their bill on the sole theory that they were entitled to the relief prayed for because the property in question was being

held for them by the respondents as trustees. Thus the complainants' previously-stated contention is in accord with the general plan of their bill. However, a consideration of the evidence shows clearly that it does not support the allegations of the bill relating to the manner of dealing by the respective parties in connection with the property whereby a resulting trust for complainants' benefit was allegedly established. In other words, there is a material variance between the complainants' bill and their proof. In our judgment this is a serious and vital defect in their case.

It is settled that a resulting trust must be established by full, clear and satisfactory evidence. *Gooding* v. *Broadway Baptist Church,* 46 R. I. 106. In our opinion the evidence in this cause falls far short of that requirement. It does not show that the respondent Antonio Pate, acting for and on behalf of the complainants, agreed to purchase the two lots on Elmwood avenue for $3000 advanced by them, as is alleged in the bill. On the contrary, the evidence supports the respondents' contention that the complainants merely negotiated with Antonio Pate in order to buy the lots in question from him, but not that they turned their money over to him to purchase the land for them from its then owners.

In addition to the testimony we have already quoted the complainant Rocco Romeo testified: "* * * there was four lots with the house. He was going to buy two lots with the house and sell me the other two lots facing Elmwood Avenue, which number is on the plat." The complainant wife also testified: "He was selling us two lots. * * * He was anxious to sell these two lots — see. He went to see us and he wish we bought it from him and we did." The entire testimony shows that the understanding between the parties was that after Antonio Pate had purchased the premises from the Gentile heirs he was to sell two of the lots to the complainants. The relationship of seller and buyer is thus plainly indicated. Evidence to prove a re-

sulting trust in favor of the complainants is lacking. One seeking to establish such a trust must show that the consideration paid for the conveyance to the nominal purchaser was the property of the claimant and that he, while permitting the conveyance of the legal title to the nominal purchaser, intended to retain the beneficial interest. *Reynolds* v. *Blaisdell,* 23 R. I. 16; *Szlatenyi* v. *Cleverley,* 72 R. I. 253.

Moreover, the decision of the trial justice in favor of the complainants shows that, in view of the evidence submitted, he considered that he had before him for determination a proceeding which involved merely a prayer for the specific performance of a contract for the conveyance of real estate. However, the decree which was entered following his decision contained in one of its paragraphs a finding that the respondents were holding the record title to the real estate in dispute as trustees for the benefit of the complainants. In our opinion this inconsistency is not excused or explained by the fact that the bill contained a prayer for general relief respecting the entry of "such further orders and decrees * * * as the nature of the case may require."

If we assume, however, that it could properly be so treated then other difficulties appear to the sustaining of the decree as entered by the superior court, in view of the facts and circumstances appearing in evidence. There is in the cause only one memorandum in writing which could reasonably be argued as satisfying in any way the statute of frauds as construed by this court. G. L. 1938, chap. 481, §1. That is the receipt for $3000 to which we have previously referred. The statute provides, among other things, that the note or memorandum in writing shall be "signed by the party to be charged therewith * * *."

In this cause the above-mentioned memorandum is signed by respondent Antonio Pate but not by his wife who is a joint owner of the property and who, at the time they acquired it, also signed the note and mortgage for $3000 running to a bank. In these circumstances it is question-

able, even if it is assumed that a decree ordering a conveyance might be entered against the respondent Antonio Pate, whether or not his wife could be compelled to convey her interest in the property. It might be that the knowledge of the complainants as to the situation respecting the title to the property at the time they made their alleged agreement with the respondents and later started this proceeding, together with all the existing circumstances, would raise a serious question as to whether the complainants could properly maintain this bill or obtain specific performance with compensation for the wife's interest. This is granted in the proper case at the election of a vendee. See *Najarian* v. *Boyajian*, 48 R. I. 213. However, the complainants have not requested such performance in the instant cause in so far as the title and rights of the respondent wife are concerned.

As we view the whole record we are of the opinion that the superior court erred in granting the prayers of the bill of complaint and in entering the decree appealed from.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for the entry of a decree denying and dismissing the bill of complaint.

*Louis V. Jackvony*, for complainants.

*Philip S. Knauer, Philip S. Knauer, Jr., William B. Sweeney*, for respondent.