MAUDE W. CHASE *vs.* JOHN F. CHASE *et al.*

JUNE 15, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'Connell, J. This cause is before us on complainant's appeal from a final decree denying and dismissing the amended bill of complaint and dissolving the preliminary injunction theretofore entered. The original bill was filed on October 4, 1930 and the amended bill on March 15, 1932. Hearing thereon was held on April 3 and 4, 1946, more than fifteen years after commencement of these proceedings.

The amended bill joins the Aquidneck National Exchange Bank and Savings Company of Newport, hereinafter called the bank, as a party respondent and alleges in substance that the respondent John F. Chase, complainant's husband, who will be referred to as the respondent, was the owner of eight certain parcels of land, some of which he inherited from his mother, who died in 1914, and the others had been acquired by purchase out of money alleged to be a "common fund" belonging to both complainant and respondent; that all of these properties had been heavily mortgaged; and that they had great value provided the mortgages could be paid off.

The bill then alleges that complainant and respondent entered into a "joint enterprise" to pay off the mortgages; that it was thereupon agreed that complainant would devote her time to respondent's florist business and that the *profits* from such business would constitute a "common fund" for the benefit of both and would be used to pay off these mortgages; and that no salary was to be paid to complainant since it was understood and agreed that her compensation was to consist of an equal interest with the respondent in the common fund and also in the real estate after the mortgages had been paid off out of such fund.

It is further alleged that complainant, relying on such agreement, devoted her services to selling flowers, and that due to her efforts the business, which had not there-

tofore proved successful, began to show substantial profits, which were deposited in the business bank account in the husband's name and were used to carry out the purpose of the agreement, namely, the paying off of the mortgages on the real estate herein referred to; that respondent repeatedly urged her to continue her efforts so that she might later enjoy, equally with him, said real estate and the income therefrom; that the purpose of such "joint enterprise" was in fact accomplished and the mortgages were fully paid off in about nine years from the making of the alleged agreement; and that complainant then ceased to be quite so active in the business although she still assisted respondent to a considerable extent up to 1927.

The bill also alleges that respondent, on November 18, 1929, being heavily indebted to the bank, which indebtedness was secured by pledges of securities which had been greatly reduced in value because of the depression, gave a mortgage to the bank of all his property except the sixth parcel described in the bill of complaint, which mortgage complainant did not sign; that on or about July 1, 1930 he executed a mortgage of said sixth parcel to the bank, in which complainant did not join; and that at the time of the execution of the mortgages the bank, through its counsel, had knowledge of her interest in the real estate thereby pledged and the income therefrom.

The complainant alleges that she is entitled to an equitable lien for a half interest in the real estate by reason of the alleged agreement with respondent, which claim should have precedence over the interest of the bank. She prayed for an accounting, for the appointment of a receiver, and for a decree declaring her to be entitled to a one-half interest in the real estate. She also prayed that the rights of the bank, if any, be subordinated to her rights; that respondent be enjoined from disposing of the real estate; and that the bank be enjoined from foreclosing or transferring the mortgages above referred to. The bill also con-

tained a prayer for general relief. The cause was heard on amended bill, answers, replications and proof.

In support of her claim, complainant testified that when her husband got his mother's will, after the latter's death in 1914, he told her "everything was mortgaged to the hilt" and "We won't get nothing out of it"; that in 1914 or shortly thereafter she had an "agreement or talk" with her husband about the florist business, and thereafter she sold flowers in Boston, Taunton, New Bedford and Fall River, Massachusetts, and in Providence, Pawtucket and Narragansett Pier in this state; that she continued to sell flowers regularly until 1923; that in the beginning her sales amounted to about $2,000 a year and later they increased to about $2,500 a year; and that the mortgages except one were paid off between 1914 and 1927 out of "the money we had earned." She gave no testimony as to the cost of her sales operations or the amount of profit, if any, therefrom.

Respondent denied that there was any agreement made with complainant respecting the conduct of his florist business or sharing in any of his real estate. He stated that she assisted him in the sale of his flowers only in 1921 and 1922 and that the records showed that during the other years he sold the surplus flowers on commission through persons other than his wife. He further testified that he never asked her to assist him in selling flowers and that whatever work she did was "against my wishes entirely."

Respondent presented as a witness complainant's former attorney. He denied her charge that he had advised the bank, of which he was then an officer, of her claim against the real estate of her husband before the bank took the mortgages thereon. He further stated that he had nothing to do with these transactions, and because of the confidential nature of the relationship he had given the bank no information about conversations previously held with complainant concerning any claim she might have against

her husband's estate. He further testified, contrary to complainant's assertions, that he had never advised her that she had an enforceable claim against her husband's realty because of the agreement alleged by her. He also testified that he had never disclosed to the bank or any other party the information which complainant had given to him as her counsel.

Complainant makes two contentions in her claim of appeal: first, that the trial justice committed error in admitting the testimony of her former counsel referred to above; and second, that the action of the court in dismissing the bill of complaint was contrary to the weight of the evidence. We cannot agree with the first contention. At the close of her testimony she charged that the bank knew of her claim against her husband's property, and that this knowledge came to it through one of its officers who had previously represented her as attorney in a divorce case and with whom she had discussed her claim with reference to the agreement here sought to be enforced. In referring to her former attorney she stated that he had told her she had a good claim and "Then he betrayed me."

In the circumstances appearing herein it is our judgment that she had waived any right or privilege she might have on the ground that her statements were confidential in nature. Since she herself had opened up the question as to the advice she claimed to have received from her former attorney and had published her version of the privileged communications, it was proper for the court to permit the attorney to refute her statements relative thereto, especially in defense of his professional reputation against her charge that he had divulged to the bank without her permission information which he had received from her while the relationship of attorney and client existed.

As to her second contention, it is to be noted that the agreement relied upon was an oral one which was within the statute of frauds. General laws 1938, chapter 481. She must therefore rely upon such proof as would support the

existence of something in the nature of a resulting trust. The facts which create such a trust are limited in character. They must be 'of such a nature that the one to be charged with a trust has by contract, agreement or circumstances put himself in a confidential or fiduciary position which constitutes him a real or informal trustee for the complainant. To give rise to such resulting trust the contract, agreement or circumstances establishing that confidential or fiduciary relationship must be shown by evidence that is full, clear, satisfactory and convincing, particularly where the relationship of husband and wife is involved. *Reynolds* v. *Blaisdell*, 23 R. I. 16; *Gooding* v. *Broadway Baptist Church*, 46 R. I. 106; *Tucker* v. *Tucker*, 67 R. I. 29; *Romeo* v. *Pate*, 74 R. I. 245.

We think the evidence in the instant cause falls short of this requirement. In his decision the trial justice, in appraising the evidence, stated: "Her testimony is most unsatisfactory. * * * There is nothing concrete or tangible in her testimony on which the Court can find any express or implied agreement, as set out in the bill, for a joint enterprise or the setting up of a common fund." He concluded with the statement that complainant had not proven by clear and satisfactory evidence either a capital contribution or a specific agreement. From a careful consideration of the transcript we cannot say that the trial justice was clearly wrong and therefore we cannot disturb his decision.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Greenough, Lyman & Cross, Owen P. Reid,* for complainant.

*William MacLeod, W. Ward Harvey,* for respondent.