565 P.2d 1374

Floyd E. SKELTON and Idaho Livestock Commission Company, an Idaho Corporation, Plaintiffs-Respondents,

v.

Louise SPENCER, Leland Spencer, Carmen Spencer Jensen, Alexa Spencer Elkington, Janet Spencer, Miriam Spencer and the Idaho First National Bank, Executor of the Estate of S. R. Spencer, Deceased, Defendants,

Louise Spencer and Mariam Spencer, Defendants-Appellants.

No. 12250.

Supreme Court of Idaho.

June 27, 1977.

418

Lloyd J. Webb, Webb, Burton, Carlson & Pedersen, Twin Falls, for defendants-appellants.

Terry L. Crapo, Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, for plaintiffs-respondents.

SCOGGIN, District Judge (ret.).

Defendants and appellants Louise Spencer and her daughter Miriam Spencer appeal from a judgment of the district court in favor of plaintiffs and respondents Floyd E. Skelton and the Idaho Livestock Commission Company on their action for specific performance. Respondents brought their action seeking specific performance of settlement agreements which they and the appellants executed to settle an action pending between them. We affirm the judgment granting specific performance.

The basic facts of the action which was allegedly settled by the agreements at issue here are stated in the opinion of this Court in *Spencer v. Spencer,* 91 Idaho 880, 434 P.2d 98 (1967). Following the remand to the district court after the appeal to this Court, several years of postponements and delay ensued before the underlying action was set for trial. However, the action was finally set for trial on May 1, 1973, and on that day a jury was selected. Before counsel made their opening statements, respondents and appellant Louise Spencer entered into negotiations through their respective counsel to settle the action. A compromise was reached which was reduced to the written settlement agreements at issue here.

At the time the settlement agreements were executed and for some two months thereafter, appellant Louise Spencer was apparently satisfied with the agreements and with the work of her then counsel in obtaining them. Subsequently Mrs. Spencer discharged her former attorneys and refused to perform her covenants under the settlement agreements. Respondents

served notice of default and brought this action for specific performance of the settlement agreements.

The minute details of the settlement agreements are not important here. Briefly, in consideration of a payment of $37,500 from respondent Skelton ($5,000 of which was paid upon execution of the agreements), appellants covenanted not to proceed further in the action brought by Mrs. Spencer and not to execute against respondent Skelton. A covenant not to sue was executed with respondent Idaho Livestock Commission Company in consideration of a payment of $150,000 ($25,000 paid upon execution) and upon the covenant of appellants to obtain good title to and convey to the Company the stock of Mrs. Spencer's deceased husband in the Company.

The focus of appellant Louise Spencer's position in this case is an attack on the enforceability of the settlement agreements. Her evidence, which consisted solely of her affidavit, was largely directed to the pressures allegedly exerted on her during the settlement negotiations. The principal source of these alleged pressures, giving her affidavit a fair reading, was purportedly her then attorneys. There are also allegations against respondent Skelton of essentially the same character as those advanced in the original action: fraud and breach of the fiduciary duty of a surviving partner. The formal lines of appellants' defense to the action for specific performance were based on the grounds of fraud, duress, coercion and lack of assent in the execution of the settlement agreements.

The case was presented to the trial court at two separate hearings. Respondents' case-in-chief was put on at the first hearing, which appellant Louise Spencer was unable to attend personally. The case was continued for a while to determine whether Mrs. Spencer would present her testimony in person, or by deposition or affidavit. At the second hearing, Mrs. Spencer's affidavit was read into the record as her testimony and then appellants rested. Respondents presented a rebuttal case through the testimony of Mrs. Spencer's former attorneys.

In granting respondents the relief of specific performance of the settlement agreements, the trial court expressly found and concluded that appellants had assented to

the execution of the settlement agreements, and that neither respondents nor appellant Louise Spencer's former attorneys had been responsible for any fraud, duress, or coercion in the negotiations leading to, and the execution of, the settlement agreements. In reaching its decision, the trial court relied upon the testimony of appellant Louise Spencer's former attorneys, which was admitted over the appellants' objections that it violated the attorney-client privilege for confidential communications.

■ Although appellants make twenty-nine assignments of error, the repeated ground for their assignments of error is the trial court's alleged error in admitting the testimony of appellant Louise Spencer's former attorneys. Analytically, the case before us thus presents two issues: (1) Did the trial court err in admitting into evidence the testimony of appellant Louise Spencer's former attorneys on the ground that she waived the privilege against disclosure of confidential communications between attorney and client by testifying to the confidential communications? (2) Is there substantial, competent evidence in the record to support the trial court's findings of fact, conclusions of law and judgment?

The client's privilege against disclosure of confidential communications between attorney and client is provided for in Idaho by statute. I.C. § 9–203 provides in pertinent part:

"9–203. Confidential relations and communications.—There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases:

.     .     .     .     .

2. An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

In construing a related subsection of I.C. § 9–203, we have previously noted that:

"[I]t must be said that so far as interpreting subdivision 2 of C.S., sec. 7937, [I.C. § 9–203(2)] the use of the words 'without the consent' of the client made no change in the common law, and that that subdivision is a mere restatement of the common law. It is reasonable to say that the legislature intended the common-law interpretation thereof." *Sprouse v. Magee,* 46 Idaho 622, 631, 269 P. 993, 996 (1928).

Thus, as at common law, the "consent" of the client to the disclosure of confidential communications may be either express or implied from the conduct of the client. *Grant v. Harris,* 116 Va. 642, 82 S.E. 718, 719 (1914); 8 Wigmore on Evidence § 2327, at 634 (McNaughton rev. 1961). When the "consent" of the client is found, the privilege is said to have been "waived."

The waiver, if any, must be found by implication. Therefore we are faced with a slightly more difficult problem. Wigmore has succinctly stated it as follows:

"What constitutes a *waiver by implication?*

"Judicial decision gives no clear answer to this question. In deciding it, regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and consistency. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final." 8 Wigmore, *supra,* § 2327 at 635–36. (Emphasis in original; footnote omitted.)

Significant consideration must also be given to whether the rationale behind the privilege—encouraging a full and frank professional relationship between attorney and client—has any continued vitality in light of the client's conduct. *See:* Comment, "Limitations on California Professional Privileges: Waiver Principles and the Policies They Promote," 9 U.C.D. L. Rev. 477 (1976).

Among others, Wigmore has identified the following as two instances in which a waiver by implication will be found:

"(4) The client's offer of his own or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.

.    .    .    .    .    .

"(6) When the client alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue." 8 Wigmore, *supra*, § 2327 at 638. (Emphasis in original; footnote omitted.)

*See also:* McCormick on Evidence, § 91 at 191 and § 93 at 194–95 (2d ed. 1972); Comment, *supra*, 9 U.C.D. L. Rev. at 496–502, 509–511, 518–520. This Court has also recognized that the attorney-client privilege is a defensive shield and not an offensive sword. *In re Niday,* 15 Idaho 559, 566, 98 P. 845 (1908). Here, in support of her defense to the action for specific performance, Mrs. Spencer "testified" both to her communications with her attorneys throughout the settlement process and to the nature of their relation with her while discharging their duties as her attorneys. Having attacked the settlement agreements by this evidence, appellants then sought to prevent respondents from asking certain questions of appellant Louise Spencer's former attorneys, who were the other participants to the conversations so exposed and whose reputation and professional integrity were impugned.

In these circumstances, appellant Louise Spencer's testimony impliedly consented to the disclosure of information she was otherwise privileged to withhold. Fairness requires that what she had disclosed could not later be withheld. Moreover, having herself disclosed communications and conduct otherwise privileged from disclosure, the rationale behind the privilege would no longer

be served by recognizing appellant Louise Spencer's efforts to invoke it as a bar to the testimony of her former attorneys.

The preceding application of the general principles governing the attorney-client privilege to the circumstances of this case is not unique. Many cases quite analogous to this one have been decided by other courts. In *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888), the United States Supreme Court had occasion to decide a question quite similar to the one we decide today. The Court there said:

"Defendant Blackburn insists, however, in her answer, that the part she took in the litigation of these two cases was the result of misplaced confidence in her counsel, by whom she alleges she was deceived, misadvised, and misled; that she was ignorant of her rights; and that she ought not to be held estopped in the premise; while at the same time it is objected on her behalf that her attorney, on the ground of privileged communications, should not be permitted to defend himself by testifying to the facts and circumstances under which he advised her, and the advice which he actually gave.

"The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure. But the privilege is that of the client alone, and no rule prohibits the latter from divulging his own secrets. And if the client has voluntarily waived the privilege, it cannot be insisted on to close the mouth of the attorney. When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and Mr. Weatherford, and respecting which she testified, she waived her right to object to his giving his own account of the matter." 128 U.S. at 470–471, 9 S.Ct. at 127.

This same reasoning as to the facts here in question has been upheld by the appellate courts of several states which have been called upon to decide this question.

*See: Rose v. Crawford,* 37 Cal.App. 664, 667, 174 P. 69, 70 (1918); *State Compensation Ins. Fund v. Foulds,* 167 Colo. 123, 445 P.2d 716, 718 (1968); *Fearnley v. Fearnley,* 44 Colo. 417, 98 P. 819, 823 (1908); *Kelley v. Cummens,* 143 Iowa 148, 121 N.W. 540, 541–42 (1909); *Houser v. Frank,* 186 Kan. 455, 350 P.2d 801, 804 (1960); *Jackson v. Swift & Co.,* 151 So. 816, 818 (La.App. 1934); *Leverich v. Leverich,* 340 Mich. 133, 64 N.W.2d 567, 568 (1954); *Everett v. Everett,* 319 Mich. 475, 29 N.W.2d 919, 922 (1947); *In re Arnson Estate,* 2 Mich.App. 478, 140 N.W.2d 546, 549–50 (1966); *Chase v. Chase,* 78 R.I. 278, 81 A.2d 686, 688 (1951); *McClure v. Fall,* 42 S.W.2d 821, 824 (Tex.Civ.App. 1931), *aff'd* 67 S.W.2d 231 (Tex. 1934); *Grant v. Harris,* 116 Va. 642, 82 S.E. 718, 720 (1914). *See generally:* Annot., 51 A.L.R.2d 521 (1957); 8 Wigmore on Evidence, *supra*; McCormick on Evidence, *supra;* Bell, Handbook of Evidence for the Idaho Lawyer, 71–73 (2d ed. 1972); Comment, *supra,* 9 U.C.D. L. Rev. 477 (1976).

Our reading of appellant Louise Spencer's affidavit, her sole evidence in this case, convinces us that the trial court did not err in admitting into evidence the testimony of Mrs. Spencer's former attorneys. By testifying to privileged communications, and by making an issue of her defense the privileged matter of her relation with her former attorneys, appellant Louise Spencer waived the attorney-client privilege for all communications relevant to the settlement process and the conduct of her former attorneys. Her former attorneys were properly permitted to testify.

The appellants also attack the judgment of the trial court on the ground that the findings of fact, conclusions of law and judgment are not supported by substantial, competent evidence. The basis of their attack is their argument that the testimony of appellant Louise Spencer's former attorneys was improperly admitted at trial. We have concluded above that this testimony was properly admitted. It would serve no purpose here to recite each of the challenged findings and conclusions and the support for them in the evidence in the record. It is enough to repeat the general principle that factual findings made by a trial court will not be disturbed on appeal when they are supported by substantial, competent, although conflicting evidence. I.R.C.P. 52(a); *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 578, 513 P.2d 627 (1973). The findings of fact, conclusions of law and judgment of the trial court are supported by substantial, competent evidence.

The judgment of the trial court is affirmed in all respects. Respondents are entitled, pursuant to the terms of the settlement agreements, to attorney's fees on appeal in the sum of $3,000.00. Costs to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.