# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45116

H2O ENVIRONMENTAL, INC., an Idaho corporation, )
)
Plaintiff-Appellant, )
)
v. )
)
FARM SUPPLY DISTRIBUTORS, INC., an Oregon corporation, )
)
Defendant-Respondent. )

Boise, June 2018 Term

Filed: October 17, 2018

Karel A. Lehrman, Clerk

_____

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County, Hon. Gerald F. Schroeder, Senior District Judge.

The judgment of the district court is <u>reversed and remanded with instructions.</u>

Fisher Rainey Hudson, Boise, for Appellant. Rebecca A. Rainey argued.

Perkins, Mitchell, Pope & McAllister, LLP, Boise, for Respondent. Hans A. Mitchell argued.

_____

HORTON, Justice.

The underlying dispute in this case involves a commercial transaction between H2O Environmental, Inc. (H2O) and Farm Supply Distributors, Inc. (Farm Supply). Following a bench trial before the magistrate court, H2O was awarded $7,354.64 for Farm Supply's breach of an express oral contract. The magistrate court subsequently awarded attorney's fees to H2O pursuant to Idaho Code section 12-120(3), but limited its award to the amount in controversy. H2O appealed to the district court, claiming that the magistrate court abused its discretion. The district court affirmed and awarded attorney's fees to Farm Supply. H2O timely appealed. We reverse and remand with instructions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Farm Supply employed H2O to clean up a fuel spill at a gas station in Boise in July of 2014. H2O billed Farm Supply $45,828.19 for the work performed. Farm Supply paid

1

$38,473.55, leaving a balance due of $7,354.64. H2O filed suit to recover the disputed amount. Farm Supply disputed whether a contract had been formed between H2O and Farm Supply and whether H2O's charges were reasonable. Near the end of the trial, H2O inquired: "Should we talk about a schedule for submitting things to [the magistrate court] in the way of closing?" The magistrate court stated in response: "The only reason I'm hesitating is because you've already spent so many hours on this case that, as I indicated, it's going to be hard for me to think there's reasonableness on the attorney fees over $7,000."

H2O prevailed at trial. The magistrate court awarded H2O the disputed amount of $7,354.64 and pre-judgment interest of $597.32. H2O subsequently filed a memorandum of costs and fees in support of its request for an award of $55,924.46. Attorney's fees accounted for $53,403.50 of this sum. Farm Supply opposed H2O's request for costs and fees. The magistrate court addressed the issue of costs and fees in June of 2016. The magistrate court held that H2O was the prevailing party in the litigation. The magistrate court then observed:

> What I don't find is that it needed all that time and all the attorney's fees that [H2O] requested.
>
> And I think [Farm Supply] did a very good job of going through all the factors that I, as a judge, am supposed to look at in terms of determining what are reasonable fees. And I agree, this was not a hard factual case. . . . It was not a hard legal case. I mean, you had some legal arguments, but . . . this was not about some remote legal theor[ies]. It was the facts and putting them on.
>
> And thus, I am going to basically adopt [Farm Supply's] memo on terms of attorney's fees and I will award some fees. I will award the amount in dispute. And I will award the mandatory costs, but I am not going to award more.
>
> . . . .
>
> And I think as I said before, I feel—I regret that somehow I was not more helpful in getting this resolved. I sort of feel like I have a bit of a record of doing that, of getting cases resolved before they go to trial. And in my court they don't turn into attorney fees cases. You were a rare one that did. But I do not find a basis to award more than what was in dispute. And if [Farm Supply] will prepare me an order along those lines, I will sign it.

H2O appealed to the district court asserting that the magistrate court abused its discretion by limiting the award of attorney's fees to the amount in controversy. The district court held that the magistrate court had not predetermined the amount of attorney's fees it would award, noting that the magistrate court considered all of the factors required under Idaho Rule of Civil Procedure 54(e)(3). Thus, the district court affirmed the magistrate court's award of attorney's

2

fees. The district court then awarded Farm Supply its attorney's fees on appeal pursuant to Idaho Code section 12-120(3). H2O timely appealed.

## II. STANDARD OF REVIEW

When reviewing the decision of a district court sitting in its capacity as an appellate court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012) (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)).

The amount of attorney's fees to be awarded is a decision committed to the discretion of the trial court. *Id.* As we recently clarified, an alleged abuse of discretion is reviewed under a four-part test:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 864, 421 P.3d 187, 195 (2018).

## III. ANALYSIS

This appeal presents two issues for our consideration. As a threshold matter, we consider Farm Supply's contention that H2O failed to properly preserve the primary issue on appeal. We then consider whether the district court erred when it affirmed the decision of the magistrate court.

### A. H2O properly preserved the issue of attorney's fees for appeal.

Farm Supply asserts that H2O failed to preserve the issue of attorney's fees for appeal because H2O did not argue in the lower court that the award of attorney's fees was improperly limited to the amount in controversy. Farm Supply also asserts that H2O "failed to support the issue [on appeal] with argument applying the cases upon which it relies, to the facts of this case." The district court assumed, without deciding, that H2O's objections had been properly preserved.

Farm Supply is correct that this Court "will not consider issues that are raised for the first time on appeal," *Parsons v. Mutual of Enumclaw Insurance Co.*, 143 Idaho 743, 746, 152 P.3d

3

614, 617 (2007) (quoting *Murray v. Spalding*, 141 Idaho 99, 101, 106 P.3d 425, 427 (2005)), or those "that are not supported by propositions of law, authority, or argument." *Id.* at 747, 152 P.3d at 618 (quoting *Callaghan v. Callaghan*, 142 Idaho 185, 190, 125 P.3d 1061, 1066 (2005)). However, that is not the case here because the issue of an appropriate award of attorney's fees was preserved for appeal and H2O has supported its arguments with citations to pertinent authority.

The issue of attorney's fees was explicitly raised by H2O and Farm Supply before the trial court. H2O submitted a Memorandum in Support of Motion for Costs and Attorney's Fees that addressed each of the factors that a trial court must consider when evaluating an award for attorney's fees under Idaho Rule of Civil Procedure 54(e)(3). Farm Supply submitted a Response in Opposition to Plaintiff's Motion for Costs and Fees that included its own analysis of the Rule 54(e)(3) factors. It is beyond dispute that the issue of an appropriate award of attorney's fees was the issue that the trial court was asked to decide.

Farm Supply asserts that "H2O failed to raise, and so preserve, the issue [of the magistrate court improperly limited the fee award to the amount in controversy] in the lower courts." This assertion is only half true. H2O did not advance this argument before the magistrate court, but one section of its brief before the district court was captioned: "The Magistrate Court abused its discretion by predetermining that reasonable attorney fees could not exceed the amount in controversy." Clearly, the issue was presented to the district court. Therefore, we consider only Farm Supply's contention that H2O was required to raise this specific argument before the magistrate court.

We addressed this issue in *In re Guardianship of Doe*, 157 Idaho 750, 339 P.3d 1154 (2014). There, Mother had petitioned for termination of a guardianship and sought visitation with her children. *Id.* at 752–53, 339 P.3d at 1156–57. The magistrate court denied the motion to terminate the guardianship, granted Mother visitation, and summarily ordered that no costs or fees would be awarded. *Id.* at 753, 339 P.3d at 1157. Guardians appealed the order denying attorney's fees. Discussing whether the appellant was required to address the basis of the magistrate court's decision, we stated:

> In its order denying Mother's motion, the magistrate court wrote that "the parties shall bear their own attorney's fees and costs." Guardians argued to the district court that the magistrate court erred by summarily denying attorney fees. The district court held that the issue was improperly raised for the first time on

4

appeal because they did not seek attorney fees before the magistrate, file any objection to the denial, or file a motion to reconsider it. In so ruling, the district court erred.

In its order, the magistrate court sua sponte ruled "that the parties shall bear their own attorney's fees and costs." Prior to the issuance of the court's order, neither party could have known what the court's ruling would be and would have no basis for claiming to be the prevailing party. Once the court ruled, Guardians did not have to file a memorandum of costs or object in order to preserve the issue for appeal. *Oakes v. Boise Heart Clinic Physicians, PLLC*, 152 Idaho 540, 544, 272 P.3d 512, 516 (2012). Likewise, Guardians did not have to file a motion for reconsideration in order to preserve the issue on appeal. *Parkside Sch., Inc. v. Bronco Elite Arts & Athletics, LLC*, 145 Idaho 176, 179, 177 P.3d 390, 393 (2008). Therefore, the district court erred in failing to vacate the magistrate court's sua sponte ruling that neither party was entitled to an award of court costs or attorney fees.

*Id.* at 757–58, 339 P.3d at 1161–62. As was the case in *Guardianship of Doe*, H2O could not have argued that the magistrate court's award of attorney's fees was arbitrary or predetermined until the magistrate court rendered its decision. By raising this claim before the district court, H2O properly preserved this issue for appeal.

**B. The district court erred when it affirmed the magistrate court's award of attorney's fees.**

H2O contends that the district court erred when it affirmed the magistrate court's award of attorney's fees because the magistrate court abused its discretion when it improperly limited the award to the amount in controversy. We hold that the district court erred when it affirmed the magistrate court's arbitrary limitation on the award of attorney's fees to the amount in controversy.

The prevailing party in a lawsuit arising from a commercial transaction "shall be allowed a reasonable attorney's fee to be set by the court . . . ." I.C. § 12-120(3). "[T]he calculation of a reasonable attorney fee is within the trial court's discretion." *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). When awarding attorney's fees, the trial court must consider the following factors:

A. the time and labor required;
B. the novelty and difficulty of the questions;
C. the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
D. the prevailing charges for like work;
E. whether the fee is fixed or contingent;
F. the time limitations imposed by the client or the circumstances of the case;
G. the amount involved and the results obtained;

5

H. the undesirability of the case;
I. the nature and length of the professional relationship with the client;
J. awards in similar cases;
K. the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case; [and,]
L. any other factor which the court deems appropriate in the particular case.

I.R.C.P. 54(e)(3). "When awarding attorney's fees, a [trial] court must consider the applicable factors set forth in I.R.C.P. 54(e)(3) and may consider any other factor that the court deems appropriate." *Johannsen v. Utterbeck*, 146 Idaho 423, 432, 196 P.3d 341, 350 (2008) (footnote omitted) (quoting *Lee v. Nickerson*, 146 Idaho 5, 10–11, 189 P.3d 467, 472–73 (2008)). "Though it is not necessary for the court to address all of the I.R.C.P. 54(e)(3) factors in writing, the record must clearly indicate the court considered all of the factors." *Id.* at 432–33, 196 P.3d at 350–51. "[A]lthough the time and labor actually expended by an attorney is to be considered, it is also to be evaluated under a standard of reasonableness." *Med. Recovery Servs., LLC v. Jones*, 145 Idaho 106, 110, 175 P.3d 795, 799 (Ct. App. 2007).

As previously noted, when this Court reviews an alleged abuse of discretion by a trial court, it determines if the lower court:

(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 864, 421 P.3d 187, 195 (2018).

It is undisputed that the trial court perceived that the issue before it was one of discretion. It is also undisputed that the trial court acted within the outer boundaries of its discretion. The question presented by this appeal is whether the trial court acted consistently with the applicable legal standards and reached its decision by an exercise of reason. In this instance, the third prong of the abuse of discretion inquiry is closely related to the fourth prong because the applicable legal standard compels the trial court to award a reasonable attorney fee after considering the Idaho Rule of Civil Procedure 54(e)(3) factors. Stated differently, the applicable overarching legal standard here is one of reasonableness. Consequently, we focus our analysis on the interrelated third and fourth prongs of the abuse of discretion inquiry.

In *Johannsen*, this Court held that the trial court did not reach its decision regarding attorney's fees through an exercise of reason because it relied primarily on conjecture. 146 Idaho

at 433, 196 P.3d at 351. There, the trial court referred to the Idaho Rule of Civil Procedure 54(e)(3) factors and stated: "I've reviewed all of the subparts to Rule 54(e) in calculating [the attorney's fee] amount. I've spent hours and hours reading this over . . . ." *Id.* However, the trial court relied on its view that the case was "about a $10,000 project" and awarded attorney's fees accordingly. *Id.* We observed that it was "unclear why the [trial] court determined that the attorney's fees submitted by Respondent were excessive, other than the judge's vague statement that he knows what is excessive and what is reasonable based on his litigation experience." *Id.* "In determining the case to be 'about a $10,000 project,' the [trial] court seem[ed] to pull the award of attorney's fees out of thin air." *Id.* Despite the trial court's explicit reference to its consideration of the Rule 54(e)(3) factors, we ruled that the award of attorney's fees was arbitrary and based on conjecture. *Id.* Thus, this Court held that the trial court's award of $10,000 in attorney's fees was not the product of an exercise of reason. *Id.*

Here, there is nothing in the record which explains the relationship between the magistrate court's evaluation of the Idaho Rule of Civil Procedure 54(e)(3) factors and its decision regarding the amount to award for attorney's fees. It is not enough for a trial court to acknowledge the existence of the Rule 54(e)(3) factors; rather, it must appear that there is a reasoned application of those factors in the trial court's decision regarding the amount of attorney's fees to be awarded. Stated differently, in the absence of a clear explanation from the trial court, we will find an abuse of discretion when a trial court acknowledges the governing legal standard and arrives at a decision that appears to be incongruent with the application of that standard.

Ultimately, the abuse of discretion standard permits an appellate court to correct the arbitrary exercise of judicial power. As was the case in *Johannsen*, the trial court's limitation of the award of attorney's fees to the amount in controversy represented an arbitrary action which was inconsistent with the requirements of Rule 54(e)(3) and did not reflect a reasoned application of the Rule. Therefore, we hold that the district court erred when it upheld the magistrate court's decision.

Upon determination that a trial court has abused its discretion, "the appellate remedy ordinarily is not to usurp the judge's authority by exercising such discretion ourselves." *Evans v. Sawtooth Partners*, 111 Idaho 381, 387, 723 P.2d 925, 931 (Ct. App. 1986). Rather, the appropriate remedy "is to remand the case for reconsideration in light of the correct legal

7

standard." *Id*. Therefore, we reverse the district court's decision, vacate the district court's award of attorney's fees to Farm Supply, and remand with instructions to the district court to determine an appropriate award of attorney's fees to H2O incurred on intermediate appeal. The district court is further instructed to vacate the magistrate court's award of attorney's fees and to remand this matter to the magistrate court for a determination of a reasonable attorney's fee to H2O consistent with the requirements of Rule 54(e)(3).

### C. H2O is entitled to attorney's fees on appeal.

The prevailing party in a lawsuit arising from a commercial transaction is entitled to an award of attorney's fees on appeal. *Bryan Trucking, Inc. v. Gier*, 160 Idaho 422, 427, 374 P.3d 585, 590 (2016); I.C. § 12–120(3). This lawsuit arises from a commercial transaction. We therefore award attorney's fees to H2O as the prevailing party on appeal.

### IV. CONCLUSION

The magistrate court's decision to cap the award of attorney's fees at the amount in dispute was an abuse of discretion. Therefore, we reverse the district court's decision affirming the magistrate court, vacate the district court's award of attorney's fees to Farm Supply, and remand with instructions to the district court to determine an appropriate award of attorney's fees to H2O incurred on intermediate appeal. We further instruct the district court to vacate the magistrate court's award of attorney's fees and to remand this action to the magistrate court for a determination of a reasonable attorney's fee consistent with the requirements of Rule 54(e)(3). We award attorney's fees and costs on appeal to H2O.

Justice BRODY and Justice Pro Tem SOUTHWORTH **CONCUR.**

BURDICK, Chief Justice, concurring.

I concur in the majority opinion, but write separately to express my concern that this case is a great example of what is wrong with the judicial system today and what will lead to its demise in the future. The evasive and obstructive tactics by Farm Supply's insurance company, Zurich, have resulted in this simple case being ensnared in litigation for over four years. I also write to emphasize that, on remand, the entirety of this course of litigation be taken into account in determining a reasonable attorney fee award for H2O. Put simply, this case has been in litigation for over four years, all in an attempt for H2O to recover the sum of $7,354.65 owed to

it by Farm Supply via its insurance company, Zurich, for work that H2O satisfactorily completed in 2014. Rather than simply pay H2O for the work that was contracted for—work that Farm Supply itself has never disputed as unreasonable or unsatisfactory—the record is replete with instances of counsel for Farm Supply, because of the actions of Zurich, engaging in practices that hindered and prolonged the course of litigation. The record reveals the following timeline and procedural history:

On July 12, 2014, fuel that was being transported by one of Farm Supply's trucks spilled at a gas station in Boise. Craig Willis, the president and CEO of Farm Supply was notified of the spill and he subsequently called H2O, who dispatched a team to go clean the spill. Mr. Willis testified at trial that Farm Supply hired H2O and that he requested H2O come clean up the spill. H2O immediately responded and began performing the requested work. Mr. Willis testified that H2O did a "tremendous job." On July 18, 2014, H2O emailed the first invoice and supporting documentation to Farm Supply for work completed July 12 through July 15. No objection was made, and H2O continued with cleanup efforts. On July 30, Christopher Miceli, a representative from Vertex,—a company hired by Zurich to review H2O's invoice—emailed H2O a spreadsheet objecting to certain charges in the first invoice based on rates "recommended" by Vertex. On August 11, 2014, H2O emailed the second invoice to Farm Supply containing all remaining charges for the cleanup services performed by H2O. On August 27, Zurich sent a check to H2O on behalf of Farm Supply for $38,473.55, which was $7,354.64 less than the amount H2O had billed Farm Supply in the two invoices ($45,828.19). On October 23, Vertex sent a spreadsheet to H2O's counsel with recommended lower charges for the second invoice. Obviously these lower charges were not the agreed upon price between the contracting parties. Thus, the amount of $7,354.64 was disputed as unreasonable.

Prior to filing a complaint for the unpaid amount owed, H2O's counsel attempted to work with Zurich to get paid and avoid litigation for over fifty days via demand letters, phone calls, and emails. When those efforts were unsuccessful, H2O filed suit seeking to recover the amount owed to them and attorney fees. H2O incurred significant attorney fees in responding to Farm Supply's written discovery. H2O only sought discovery relating to one central issue—what did Farm Supply rely on in determining H2O's charged rates were unreasonable. H2O sought to gain this information through a 30(b)(6) deposition. Farm Supply opposed the 30(b)(6) deposition on several grounds. Counsel for Farm Supply, with little to no reasoning, first contended that the

topic "invades the attorney-client and work product privileges." The central issue to the case was why Farm Supply thought H2O's rates were unreasonable; it is unclear why or how this topic is work product or privileged information. *See Skelton v. Spencer*, 98 Idaho 417, 420, 565 P.2d 1374, 1377 (1977) ("This Court has . . . recognized that the attorney-client privilege is a defensive shield and not an offensive sword.").

And, interestingly, Farm Supply opposed the deposition in part because "Farm Supply has no knowledge regarding the reasonableness of the amount charged by [H2O] for fuel remediation services. . . . This information is not known or reasonably available to Farm Supply[.]" However, in its answer, Farm Supply contended that any payment to H2O would be unjust enrichment because H2O "has been fully compensated for the reasonable value of goods or services provided." Thus, attorneys for Farm Supply contended on one hand that H2O had been paid what it was reasonably owed, and on the other hand, contended it could not be deposed because it had no knowledge of what a reasonable charge would be. This inconsistency is one of many examples of Farm Supply's attorneys giving H2O the run-around and prolonging the course of litigation. *See* Idaho R. Professional Conduct 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.").

After several communications back and forth, an agreement was finally reached that H2O's counsel would need to travel to Enterprise, Oregon, to conduct the deposition. Counsel for Farm Supply assured H2O it would select a designee that would testify to the topics set out in H2O's deposition notice, i.e., any information as to why the amount charged by H2O was unreasonable. H2O incurred significant legal fees related to the preparation, travel, and taking of this deposition. However, despite Farm Supply's assurances, the two deponents appointed by Farm Supply did not provide any testimony regarding the reasonable value of H2O's services. Instead, Mr. Willis stated he had no knowledge of environmental remediation services, no knowledge of the value of such services, and that he had no reason to believe H2O's charges were unreasonable other than the correspondence sent to his office. The other deponent selected by Farm Supply, Carol Ward, was asked, "Do you have any knowledge, whatsoever, of the reasonableness of any of the charges that H2O charged Farm supply of its services?" to which she answered, "No." She went on to say, "I know nothing about environmental cleanup." Thus, Farm Supply's counsel required H2O's counsel to travel to Enterprise, Oregon, to depose people with no knowledge of the information H2O sought in the deposition notice. This fool's errand

that Farm Supply sent H2O's counsel on was a waste of time and resources, and runs afoul of Idaho Rule of Civil Procedure 30(b)(6). *See* I.R.C.P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."). Here, while information regarding the reasonableness of H2O's rates was reasonably available to Farm Supply via Mr. Miceli's opinion, Mr. Willis and Ms. Ward did not testify to such. The tactics used by Farm Supply to avoid complying with the 30(b)(6) deposition are demonstrative of the problematic evasive litigation tactics that result in drawn-out, arduous litigation that generates exorbitant attorney fee amounts.

Of note, Farm Supply did not designate Mr. Miceli for the 30(b)(6) deposition, even though he prepared the spreadsheet that Farm Supply relied on to argue H2O's rates as unreasonable. In fact, Farm Supply did not even disclose Mr. Miceli as an expert until the last day to conduct discovery, which effectively allowed Farm Supply to avoid having Mr. Miceli deposed. Instead, Farm Supply waited to disclose Mr. Miceli until counsel for H2O had already traveled to Enterprise for depositions, had already filed a motion in limine to exclude Mr. Miceli's testimony because he had not been disclosed, and until after H2O was out of time to depose Mr. Miceli. *See Profits Plus Capital Mgmt., LLC v. Podesta*, 156 Idaho 873, 887, 332 P.3d 785, 799 (2014) (referencing a Montana case admonishing the "blatant and systemic abuse" of the discovery process where the defense concealed evidence "until the eve of trial"). While the court did ultimately allow H2O to depose Mr. Miceli, it granted them a one hour deposition to occur the day before trial. Here again, Farm Supply's attorneys engaged in run-around tactics to avoid having their expert disclosed and deposed.

On October 21, 2015, the parties engaged in mediation after Farm Supply had moved to compel mediation. Two days after mediation, Farm Supply made an offer of judgment for the $7,354.65 it owed H2O. However, this offer contended to be inclusive of legal fees, but did not account for the fact that H2O had incurred $19,616.78 in attorney fees and costs in attempting to get the money owed to it by Farm Supply. Thus, the mediation attempt failed and the case continued to trial.

At trial, Farm Supply relied solely on Mr. Miceli's opinion as its basis for contending H2O's rates as unreasonable. Yet, according to the trial court, Mr. Miceli's testimony was "not probative and was not credible." Mr. Miceli testified as to what he relied upon in determining H2O's rates were unreasonable. The general theme of his testimony was that he relied on rate

11

sheets from companies in cities that Mr. Miceli was unfamiliar with, from years other than 2014, for different services, and for non-emergency services. For example, Mr. Miceli testified that he relied upon a rate sheet from a company in Louisiana that does not do business in Boise. He stated that he did not know if that rate sheet was even applicable in 2014. Mr. Miceli also testified he relied on a rate sheet from a company with offices in Philomath and Grants Pass Oregon, but stated he did not know where either city was or what distance the cities were from Boise. Mr. Miceli also based his opinion on a rate sheet from a company in Boise, but admitted he did not know whether that company's rate sheet included a crew truck with a lift gate, which can affect pricing. And, he admitted, the rate sheet was not for 2014 and was not for emergency services. Mr. Miceli testified that he also used a rate sheet from a company in Wilsonville, Oregon, but that he did not know where that was, what year the rate sheet was for, and did not know if the rate sheet was for emergency services. Also in Mr. Miceli's spreadsheet was a reduction of the project manager's hours by 15% of what H2O billed. At trial, Mr. Miceli stated he had no reason for his formula of reducing those hours. Rather, he relied on his experience in forming that conclusion. The trial court best summarized Mr. Miceli's problematic testimony stating:

> Farm Supply produced only the testimony of Mr. Miceli to refute H2O's claims regarding the reasonableness of the rates H2O charged in Boise in 2014. However, Mr. Miceli demonstrated absolutely no knowledge of the 2014 Boise Market. He attempted to rely on rate sheets from companies based in locations with no proximity to Boise. For several companies, he did not know the location of the city from which they operated. He also used rate sheets from years other than 2014 and was uncertain in some cases whether he was using rates that were emergency response or scheduled work.

Thus, the trial court found Mr. Miceli not probative and not credible.

I note, Farm Supply itself did not dispute the scope or quality of work performed by H2O. In fact, Farm Supply itself has never disputed the rates charged by H2O. At trial, Mr. Willis was asked, "And in this particular case, you don't have any knowledge or opinion as to whether the rates that were charged to your company by H2O are reasonable?" to which Mr. Willis responded, "No." Farm Supply has never explained why it believed the charges to be unreasonable. Rather, only Farm Supply's insurance company, Zurich, has contended the rates charged by H2O were unreasonable, thus prompting Farm Supply to engage in this litigation. Yet, the only evidence Zurich has relied on in contesting H2O's rates is that of Mr. Miceli, which was "not probative and was not credible."

In sum, this case centered on whether or not H2O's charges for cleaning up Farm Supply's fuel spill were reasonable. H2O repeatedly sought to find out why Farm Supply thought H2O's rates were not reasonable, but Farm Supply would not answer this question, effectively refusing to pay its bill and refusing to say why. Instead, Farm Supply spent years in litigation evading answering why it believed H2O's rates were not reasonable. Eventually, when Farm Supply was required to put on evidence at trial, the *only* evidence it produced in support of its argument that H2O's rates were unreasonable was not probative and not credible. And, unsurprisingly, H2O won at trial, but not until it had accrued significant attorney fees after years of litigation. Limiting H2O's recovery to the amount in controversy is especially problematic in this case, where a significant portion of the fees were accrued because Zurich was evading paying H2O and prolonging litigation. Because I find the actions of counsel for Farm Supply, via Zurich, to be obstructive and to have drawn out this litigation, I emphasize the entire course of this litigation be taken into account when calculating H2O's attorney fee award. *See Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009) (in determining whether to award attorney fees, the "entire course of the litigation must be taken into account").

We, in this business, dismiss some smaller cases as "just fighting over attorney fees" and in so doing denigrate the efforts of litigants with smaller claims or defenses. In my own mind, I know as a trial judge, I would be looking at sanctions for this frivolous defense and obnoxious discovery abuses. For the reasons discussed above, I concur.

Justice BEVAN CONCURS.